**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IceMOS Technology Corporation, | No. CV-17-02575-PHX-JAT |
| Plaintiff/Counter-defendant, | **ORDER** |
| v. | |
| Omron Corporation, | |
| Defendant/Counterclaimant. | |

Pending before the Court are IceMOS Technology Corporation's ("Plaintiff") *Daubert* motions to exclude Allan Morrison (Doc. 227), Charles Malek (Doc. 238), Randy Cavaiani (Doc. 241), Robert Vincent (Doc. 244), and Kenneth Malek (Doc. 247) as experts (collectively, "Plaintiff's *Daubert* Motions").[1] The Court now rules on the motions.[2]

## I.    BACKGROUND

Plaintiff has filed motions to exclude each of Omron Corporation's ("Defendant") experts. Defendant opposes each motion.

---

[1] Omron Corporation's motions to preclude testimony of Plaintiff's experts Walter Bratic (Doc. 293), Greg Mischou (Doc. 296), and Uzi Sasson (Doc. 299) are also pending before the Court. However, these motions would be rendered moot if the Court grants Omron Corporation's Motion for Partial Summary Judgment (Doc. 229) as to the unavailability of lost business value damages and lost profit damages; thus, the Court will not rule on these motions at this time.

[2] Although Plaintiff requests oral argument, the request for oral argument is denied because the issues have been fully briefed and oral argument would not have aided the Court's decisional process. *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Inv'rs Grp. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2019 WL 1099882, at *1 n.1 (D. Ariz. Mar. 8, 2019).

On August 5, 2019, Plaintiff filed *Daubert* Motion to Exclude Allan Morrison as an Expert (Doc. 227). Defendant responded on August 19, 2019 (Doc. 255), and Plaintiff filed its Reply on August 29, 2019 (Doc. 275).

On August 6, 2019, Plaintiff filed *Daubert* Motion to Exclude Charles Malek as an Expert (Doc. 238). Defendant responded on August 20, 2019 (Doc. 267), and Plaintiff filed its Reply on August 30, 2019 (Doc. 283).

On August 6, 2019, Plaintiff filed *Daubert* Motion to Exclude Randy Cavaiani as an Expert (Doc. 241). Defendant responded on August 20, 2019 (Doc. 264), and Plaintiff filed its Reply on August 30, 2019 (Doc. 282).

On August 6, 2019, Plaintiff filed *Daubert* Motion to Exclude Robert Vincent as an Expert (Doc. 244). Defendant responded on August 20, 2019 (Doc. 261), and Plaintiff filed its Reply on August 30, 2019 (Doc. 283).

On August 6, 2019, Plaintiff filed *Daubert* Motion to Exclude Kenneth Malek as an Expert (Doc. 247). Defendant responded on August 20, 2019 (Doc. 270), and Defendant filed its Reply on August 30, 2019 (Doc. 279).

The parties filed various motions to seal relating to each of Plaintiff's *Daubert* Motions.

### a.    Facts

Plaintiff offers super junction metal oxide semiconductor field-effect transistors ("MOSFETs"), microelectromechanical systems solutions, and advanced engineering substrates to third parties. (Doc. 25 at 2). To produce these products, Plaintiff needs fabrication services. (*Id.*). In 2007, Defendant purchased a fabrication facility and began fabricating "complementary metal-oxide semiconductor" products. (*Id.*). Around this time, Defendant approached Plaintiff to suggest that Defendant and Plaintiff enter into business together. (*Id.*).

Plaintiff and Defendant came to an agreement ("Supply Agreement") on February 28, 2011 after negotiations. (*See id.*). Their agreement included, *inter alia*, that Defendant would "perform the fabrication requested by Plaintiff" and that Defendant would "fully

resource the development of all generations of" Plaintiff's super junction MOSFET ("SJ MOSFET") for the duration of the Supply Agreement. (*Id.*; *see also* Doc. 59 at 10; Doc. 60 at 15). Defendant asserts that Plaintiff represented that "[d]emand for Plaintiff's Super Junction MOSFETs is estimated to reach a volume of up to three thousand and five hundred (3,500) wafers per month by year 2014." (*See* Doc. 28 at 42 (alteration in original) (quoting Doc. 14-1 at 2)). Defendant also alleges that the parties forecasted, based on Plaintiff's representations regarding expected demand for its product, that "monthly demand would reach 3,850 wafers per month by the fourth quarter of 2012." (*Id.* (citing Doc. 14-1 at 14)). On March 6, 2018, the Supply Agreement terminated. (Doc. 60 at 37).

Plaintiff alleges breach of contract and fraud and seeks actual damages. (Doc. 59 at 33–38). Defendant has counterclaimed and alleges breach of the implied covenant of good faith and fair dealing, two counts of breach of contract, and fraud in the inducement (relating to the alleged projections by Plaintiff) and also seeks damages. (Doc. 28 at 52–64).

### b. Plaintiff's Motions to Exclude Defendant's Experts

Plaintiff moves to exclude all five of Defendant's experts. Because Plaintiff makes similar challenges to each expert, the Court will analyze Plaintiff's motions issue by issue as it relates to each expert rather than expert by expert. The Court also organizes each issue in the order that Plaintiff challenged each expert.

There is no dispute as to Defendant's articulation of the expert opinions of Charles Malek ("C. Malek"), Randy Cavaiani ("Cavaiani"), Robert Vincent ("Vincent"), and Kenneth Malek ("K. Malek") or what Defendant is offering them to show; thus, the Court incorporates by reference Defendant's articulation of their opinions. (*See* Doc. 267 at 4–5 (C. Malek); Doc. 261 at 6–8 (Vincent); Doc. 264 at 5–6 (Cavaiani); Doc. 270 at 5–8 (K. Malek)). When the Court's analysis depends on a specific portion of an expert's opinion, the Court will indicate what portion of the opinion it is discussing.

There is some dispute as to Defendant's articulation of one of the opinions of Allan Morrison ("Morrison"). (*See* Doc. 275 at 3 ("[Defendant] tries to mislead the Court by

stating 'Morrison offered the opinion that low yield was not **exclusively** Defendant's fault. . . .'" (ellipsis in original) (quoting Doc. 255 at 11))). Plaintiff asserts that Morrison's opinion was that "[Defendant] was not liable for **any** yield issues." (*See id.* (quoting Doc. 227-1 at 12)). However, Plaintiff leaves out a portion of Morrison's opinion. Morrison's opinion continued, "it was [Plaintiff]'s issues with manufacturability, including process design and test design, as well as the constant process changes themselves, that caused *most* of the yield issues." (Doc. 227-1 at 12 (emphasis added)). That opinion is consistent with what Defendant articulated in its Response (Doc. 255 at 11). Morrison's opinion is that most of the yield issues were caused by Plaintiff and other yield issues were caused by others, possibly including Defendant. In any event, the asserted distinction that Plaintiff draws between how Defendant characterizes Morrison's opinion and his actual opinion is irrelevant to the Court's analysis. It appears there is no other dispute to Defendant's presentation of Morrison's opinions, so the Court adopts by reference Defendant's articulation of Morrison's opinions, which is copied verbatim from Morrison's expert report. (*See id.* at 5–6 (quoting Doc. 227-1 at 12)).

## II.   LEGAL STANDARD

A party seeking to offer an expert opinion must show that the opinion satisfies the requirements set forth by Federal Rule of Evidence 702 ("Rule 702"). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires that trial judges act as gatekeepers. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 597 (1993). Trial judges fill this role by making a preliminary assessment on the admissibility of expert testimony. *See id.* at 589.

Specifically, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* The court's gatekeeping role requires it to determine that an expert is qualified, that the expert's opinion is reliable in that it is based on sufficient facts or data and is the product of reliable principles and methods, and that the expert's testimony fits the case such that the testimony is relevant. *See id.* The inquiry established by Rule 702 is "a flexible one" and its "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

The party offering expert testimony must show that the testimony is admissible under Rule 702. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Because Rule 702's requirements are conditions for determining whether expert testimony is admissible, Federal Rule of Evidence 104(a) requires that the party offering the expert testimony show by a preponderance of the evidence that the expert testimony is admissible under Rule 702. *See* Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592–93 & n.10; *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

Plaintiff argues that all five of Defendant's experts should be precluded from testifying for various reasons. The Court will evaluate each argument in turn.

## III. ANALYSIS

### a. Qualifications

Plaintiff asserts that Morrison, C. Malek, Cavaiani, and Vincent are not qualified to offer the expert opinions they rendered in their expert reports. *See* Fed. R. Evid. 702; (Doc. 227 at 19 (Morrison); Doc. 238 at 8–12 (C. Malek); Doc. 241 at 9–12 (Cavaiani); Doc. 244 at 7–12 (Vincent)).

Under Rule 702, the trial court must analyze whether the proffered witness is qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The qualification standard is meant to be broad and to seek a 'minimal foundation' justifying the expert's role as an expert." *Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017) (quoting *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)). Criticisms leveled against an expert that are

"specific objections" as to an expert's qualifications go to the weight of the expert's testimony, not its admissibility. *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 963–64 (D. Ariz. 2007) (finding expert was qualified to opine on a topic despite lack of knowledge as to a particular specialty within his field because it was a "specific objection[]"). In other words, "differing areas of expertise are perhaps germane to the weight and allowed scope of [an expert]'s testimony, [but] they do not bar admissibility." *Erickson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *4 (D. Ariz. Nov. 3, 2016) (citing *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987)). Rather, "[d]isputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony.'" *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (alteration in original) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). Indeed, Rule 702 was not meant to supplant "the traditional and appropriate means of attacking shaky but admissible evidence," including "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. As such, Rule 702 sets a "relatively low bar" to satisfy its requirement that an expert be qualified. *GDC Technics, Ltd. v. Grace*, No. SA-15-CV-488-RP, 2017 WL 11025769, at *2 (W.D. Tex. Feb. 17, 2017).

An expert's qualifications can be based solely on experience. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"). That is, an expert does not need scientific or other technical training to speak on a particular topic if the expert's experience qualifies the expert to speak on that topic. *See id.* As the Notes of the Advisory Committee point out, expert testimony can be offered by "'skilled' witnesses, such as bankers or landowners testifying to land values." *See* Fed. R. Evid. 702 Notes of Advisory Committee on Proposed Rules. In short, the relevant inquiry is whether the expert has the minimal foundation of skill, developed by experience in the relevant field, or other technical or scientific training necessary to offer an opinion as to a particular topic. *See* Fed. R. Evid. 702; *Allen*, 287 F. Supp. 3d at 776.

### 1. Morrison

Plaintiff argues that Morrison was unqualified to render the following opinion: "[a]bsent issues of manufacturability and constant process changes that are the responsibility of [Plaintiff], [Plaintiff] should have had a new foundry or foundries running long ago . . . ." (*See* Doc. at 227 at 18–20 (quoting Doc. 227-1 at 12)). This opinion was offered to rebut the opinion of Plaintiff's expert, Walter Bratic, which suggested that Plaintiff's damages from the Defendant's alleged breach includes lost profits through 2026. (*See* Doc. 255 at 5–6; Doc. 255-3 at 37–38).

The Court rejects Plaintiff's challenges to Morrison's qualifications to render an opinion on how long it takes to establish a semiconductor operation. Morrison has over thirty-six years of experience in the semiconductor industry and approximately thirteen years of experience with foundry consulting. (*See* Doc. 227-1 at 3–4, 13). The fact that Morrison does not have experience with an SJ MOSFET operation is a specific objection to the strength of his qualifications, and thus, must be probed at trial and not on a motion to exclude his testimony under *Daubert*.

### 2. C. Malek

Plaintiff asserts C. Malek is not qualified to render the expert opinions he came to in his report. (Doc. 238 at 8–12). In essence, Plaintiff's claim is that C. Malek does not have experience fabricating SJ MOSFETs or MOSFETs in general. (*Id.* at 8–9). Defendant responds that C. Malek is offering an expert opinion "to rebut the damages analysis of [Plaintiff]'s experts, who (incorrectly) adopted a[ Plaintiff] forecast of 5% market share within two years" and to show "[Defendant]'s losses were caused by (misplaced) reliance on [Plaintiff]," which is part of Defendant's breach of the covenant of good faith and fair dealing and fraudulent inducement claims. (*See* Doc. 267 at 5). Thus, Defendant argues that C. Malek does not need to have any understanding on how to fabricate SJ MOSFETs or any type of MOSFET to render the expert opinions he has articulated in his reports. (*See id.* at 6–9).

The Court finds that C. Malek is qualified to offer opinions as to how a purchaser of MOSFETs would select a MOSFET (SJ or otherwise), which is relevant to the issue of whether Plaintiff could ever reach five percent market share. C. Malek has extensive experience in original equipment manufacturing product design, and thus, is familiar with how such a product designer would select a MOSFET. (Doc. 238-1 at 2–3, 17). Product design is a skill that C. Malek has honed through this extensive experience. *See* Fed. R. Evid. 702 Notes of Advisory Committee on Proposed Rules. Contrary to Plaintiff's claims, knowing how to manufacture a MOSFET is not necessary to understanding what makes a MOSFET attractive to a product designer. For example, an individual need not know how to build a computer to compare which computer the individual should purchase. Whether C. Malek is sufficiently familiar with the science behind SJ MOSFETs or MOSFETs in general is a matter that goes to the strength of his credentials and thus the weight of his expert testimony—not admissibility. Defendant has shown by a preponderance of the evidence the minimal foundation required for C. Malek to testify as an expert on the issues Defendant seeks to offer his opinions.[3]

### 3.    Cavaiani

Plaintiff makes the same challenge to Cavaiani's qualifications as it did to C. Malek. Essentially Plaintiff asserts that Cavaiani's lack of "any particular training or specialized experience with SJ MOSFETS, or even power MOSFETs in general, and the sales of those products" render him unqualified. (Doc. 241 at 9–10; *see also id.* at 11 (stating Cavaiani is unqualified because "he has no experience in the sales and marketing of SJ MOSFETs, or even power MOSFETs in general")). Defendant responds Cavaiani's "background

---

[3] It seems Plaintiff also argues that C. Malek's experience is outdated, and thus, he is unqualified to testify. (*See* Doc. 238 at 9 ("C. Malek last worked for a semiconductor company more than twenty years ago in 1998—***thirteen years prior to the Supply Agreement at issue in this case and before SJ MOSFETs even existed***.")). Yet, Plaintiff offers no reason why a thirteen-year absence from product design would make C. Malek unqualified to testify as to how a product designer would evaluate a product like the SJ MOSFET, especially in light of his extensive experience in this field. *Cf. Hinkle v. White*, No. 12-CV-0133-MJR-SCW, 2014 WL 12787977, at *3 (S.D. Ill. Jan. 10, 2014). Without any indication that product design has changed over the past thirteen years, the Court cannot say that C. Malek's recent absence from product design renders him unqualified to offer the opinions he has come to.

comprising '20+ yrs [sic] of experience in sales, application engineering, and marketing experience with thousands of commodity semiconductor products'" is sufficient to offer an opinion as to "the many ways in which [Plaintiff]'s projections were speculative, unrealistic and false." (Doc. 264 at 7–8 (quoting Doc. 241-2 at 5)). Defendant states that this opinion is relevant to Plaintiff's alleged damages and Defendant's counterclaims relating to breach of the covenant of good faith and fair dealing as well as fraudulent inducement. (*Id.* at 6).

Plaintiff's argument fails for the same reason the Court rejected its challenge as to C. Malek's qualifications. Defendant has shown the minimal foundation necessary for Cavaiani to testify as an expert on the issue of whether Plaintiff's projections were speculative, unrealistic, or false. As Defendant points out, Cavaiani has had more than twenty years of experience with semiconductor products, and an SJ MOSFET relies, in part, on semiconductor technology.[4] (*See* Doc. 264 at 7–8; *see also* Doc. 241-2 at 5). As such, Cavaiani's experience allows him to speak on how Plaintiff's projections that its SJ MOSFET, a semiconductor product, would reach a five percent market share were speculative, unrealistic, or false. As with C. Malek, a lack of any particularized knowledge relating to the particular science behind SJ MOSFETs is a specific criticism that goes to the overall strength of his credentials and thus the weight of Cavaiani's testimony, not its admissibility.

The Court further rejects Plaintiff's argument that Cavaiani is not qualified because he has not worked in the field since 2002. (Doc. 241 at 11). Plaintiff does not explain why Cavaiani's lack of work in the field since 2002 makes him unqualified to testify on the issue of its alleged speculative, unrealistic, or false projections. *Cf. Hinkle v. White*, No. 12-CV-0133-MJR-SCW, 2014 WL 12787977, at *3 (S.D. Ill. Jan. 10, 2014) (concluding expert was qualified despite absence from the field of five years because expert had extensive past experience on the topic he was discussing and there was no evidence of any change in the field). The Court will not hypothesize arguments for Plaintiff as to why

---

[4] Indeed, MOSFET stands for "metal-oxide *semiconductor* field-effect transistor." (*See* Doc. 59 at 5 (emphasis added) (Plaintiff's Second Amended Complaint)).

Cavaiani's absence from the field since 2002 might affect his ability to testify on whether Plaintiff's projections relating to a semiconductor product were speculative, unrealistic, or false in light of his extensive experience on this topic.

Finally, Plaintiff contends that Cavaiani is unqualified to offer an expert opinion in this case because he "lacks knowledge and experience in the relevant market" of Beijing and Shenzhen. (*See* Doc. 241 at 12). The Court disagrees. First, Plaintiff has not established in any way how Cavaiani's lack of experience with these markets would affect his opinion on the "many ways in which [Plaintiff]'s projections were speculative, unrealistic and false." (Doc. 264 at 7–8). Second, again, this argument goes to the strength of Cavaiani's credentials. Thus, any lack of experience in the Beijing and Shenzhen markets is an issue of credibility not admissibility.

The Court finds that Defendant has shown by the preponderance of the evidence that Cavaiani is sufficiently qualified to offer an opinion as to whether Plaintiff's projections for its SJ MOSFET product were speculative, unrealistic, or false.

### 4. Vincent

Plaintiff makes two primary challenges to the qualifications of Vincent. First, Plaintiff asks the Court to exclude Vincent because he "lied" about his qualifications. (*See* Doc. 244 at 7–9). Defendant responds that Vincent did not lie, and even if he did, he is sufficiently qualified to offer the opinions he rendered in his report and any inaccuracies Vincent articulated relating to his credentials can be probed on cross-examination. (*See* Doc. 261 at 9–10). Second, Plaintiff argues that Vincent should be excluded because he "is not an expert on the valuation of semiconductor companies." (Doc. 244 at 7, 9–12). Defendant contends that Vincent's expert testimony is intended to rebut Mischou's "projected financial value of IceMOS." (Doc. 261 at 5). As such, Defendant suggests that Vincent's background in investment banking, financial transactions, and valuing companies is sufficient to qualify him to rebut Mischou's financial valuation of IceMOS. (*See id.* at 11–12).

Plaintiff asserts Vincent included "inaccurate and highly misleading" entries in his professional resume. (*See* Doc. 244 at 7). That issue relates to Vincent's credibility not his qualifications as an expert.[5] *See Nunn v. State Farm Mut. Auto. Ins.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *7 (N.D. Tex. June 22, 2010) (rejecting argument by party that expert was unqualified under Rule 702 because there were inaccuracies in expert's resume and asserting that party was free to explore purported inaccuracies on cross-examination). The Court will review Vincent's professional resume for itself without the gloss that Plaintiff seeks to place over it. *See id.* (reviewing expert's qualifications based on the record despite potential inaccuracies pointed out by party seeking exclusion of expert testimony).

The Court disagrees with Plaintiff that Vincent is not qualified to offer the expert opinions in his report. As with C. Malek and Cavaiani, Plaintiff only asserts specific criticisms about Vincent's lack of understanding of SJ MOSFET technology that go to the strength of his credentials, which speaks to the weight of Vincent's expert testimony, not its admissibility. In short, Vincent is qualified to render an opinion as to whether there were flaws in Mischou's financial valuation. Indeed, Vincent has played a role in "over 250 corporate and project finance transactions" in his twenty-five-year career and has experience as an investment banker. (Doc. 251-1 at 16). The Court finds Defendant has shown by the preponderance of the evidence that Vincent has the minimal foundation of knowledge, skill, and experience to rebut Mischou's financial valuation of IceMOS.

---

[5] Of course if all of an expert's qualifications were false or inaccurate, then that might be a ground to exclude the expert because the expert would then have no qualifications. However, the relevant inquiry under Rule 702 is whether the expert is qualified not whether the expert is full of virtue. Therefore, the Court rejects Plaintiff's argument that the Court must strike all of Vincent's experience because Plaintiff believes Vincent has provided inaccuracies in his professional resume. (*See* Doc. 244 at 9).

### b. Reliable Principles and Methods

Expert opinions must be "the product of reliable principles and methods." Fed. R. Evid. 702(c). "Rule 702 grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co.*, 526 U.S. at 158.

#### 1. C. Malek

Plaintiff asserts C. Malek's opinions are not based on reliable principles and methods because he used a "figure of merit" that Plaintiff claims is unreliable. (*See* Doc. 238 at 12–14). Defendant responds that C. Malek simply used math and that Plaintiff mischaracterizes his testimony. (*See* Doc. 267 at 9–12). Defendant explains that the "figure of merit" that C. Malek describes is simply a calculation based on his expertise of what a product designer, like himself, would look for. (*See id.*).

"[T]he relevant factors for determining reliability will vary from expertise to expertise . . . ." *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* An expert's opinion can be based on the "application of extensive experience," which satisfies Rule 702(c)'s requirement that an expert opinion be based upon reliable principles and methods. *See id.* When an expert's opinion is based on the application of extensive experience, the lack of peer review, publication, and general acceptance is not fatal as the expert's opinion is the product of the expert's experience, not science. *See Aloe Vera of Am. Inc. v. United States*, No. CV-99-01794-PHX-JAT, 2014 WL 3072981, at *11 (D. Ariz. July 7, 2014); *see also United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) ("Experiential expert testimony . . . does not 'rely on anything like a scientific method.'" (quoting Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment)).

C. Malek's opinions are based on reliable principles and methods. As Defendant notes, C. Malek simply applied math, which is certainly reliable. *See, e.g., Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012). What Defendant challenges is why C. Malek chose

the parameters he did and why he used certain values for his calculations. C. Malek's opinions are based on extensive experience in the field of original equipment manufacturing ("OEM") product design, which includes comparing the performance and capabilities of different MOSFETs and ultimately how these factors would affect a consumer's decision to select Plaintiff's SJ MOSFET over its competitors' products. As noted above, the Court finds that C. Malek is qualified to offer opinions related to this topic based on his extensive experience in OEM product design. *See supra* Section III(a)(2). That includes determining what factors would be relevant to an OEM product designer and how an OEM product designer would make the calculations to quantify these factors.

Plaintiff raises no specific challenge to C. Malek's choice of parameters from an OEM product designer standpoint, and it indicates no errors with C. Malek's calculations or any of the assumptions he made. *See Lapsley*, 689 F.3d at 809–11 (noting, in finding expert's mathematical calculations reliable, that challenging party did not indicate any error in the expert's mathematical calculations or his underlying assumptions). Plaintiff does assert C. Malek manufactured his formula for this litigation, which does, as a general matter, affect the reliability determination. (*See* Doc. 238 at 13–14). But here, C. Malek specifically testified that he had used figures of merit on previous occasions, and Plaintiff points to nothing that indicates the parameters and factors C. Malek used for his calculations here were faulty. (*See id.* at 14; *see also* Doc. 238-2 at 58–59). Plaintiff also criticizes C. Malek's calculations as not being published, peer reviewed, or generally accepted in the field. (*See* Doc. 238 at 13–14). As noted above, C. Malek applied math, a field that there has been extensive publication in, peer review of, and general acceptance of throughout the world for hundreds of years. *See* Uta C. Merzbach & Carl B. Boyer, *A History of Mathematics* (3d ed. 2011). From there, C. Malek made certain decisions as to what numbers to use for his mathematical calculations based on his extensive experience, which need not have publication, peer review, or general acceptance in the field to satisfy Rule 702(c). Contrary to Plaintiff's protestations, an expert may "draw a conclusion from

a set of observations based on extensive and specialized experience." *Kumho Tire Co.*, 526 U.S. at 156.

At bottom, Plaintiff's true challenge is to the values that C. Malek chose for purposes of his calculations. Plaintiff's alleged "faults in [C. Malek's] use of [a particular] methodology . . . go to the weight, not the admissibility, of his testimony." *Kennedy*, 161 F.3d at 1231 (second alteration in original) (quoting *McCullock*, 61 F.3d at 1044). Consequently, cross-examination and the adversarial process is the proper vehicle to make such a challenge. *See Lapsley*, 689 F.3d at 810 (concluding that a challenge to an expert's mathematical calculations, and the underlying assumptions that went into them, are generally a matter for trial). The Court finds, by a preponderance of the evidence, that C. Malek's opinions are based on reliable principles and methods.

### 2. Cavaiani

Plaintiff challenges Cavaiani's opinions as unreliable because it asserts they are the product of "*ipse dixit* guesswork." (Doc. 241 at 12–15 (citing *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002))). Like C. Malek, in coming to his conclusions, Cavaiani applied his extensive experience to the facts of this case. Consequently, the Court finds Defendant has shown by a preponderance of the evidence that Cavaiani's opinions are the product of reliable principles and methods.

### 3. Vincent

Plaintiff also suggests that Vincent's opinions are only based on "*ipse dixit* guesswork," and thus, not the product of reliable principles and methods. (Doc. 244 at 13–16 (citing *Domingo*, 289 F.3d at 607)). Again, the Court finds, as it did with C. Malek and Cavaiani, that an expert's application of extensive experience to the particular facts of a case illustrate that the expert's opinion is the product of reliable principles and methods under Rule 702(c). As such, the Court finds, by a preponderance of the evidence, that Vincent's opinions are the product of reliable principles and methods.

### 4.      K. Malek

Plaintiff argues K. Malek's opinions are not based on reliable principles and methods because it asserts he has a conflict of interest. (*See* Doc. 247 at 13–16). The thrust of its argument is that K. Malek's opinions are based, at least in part, on the opinions of C. Malek, Cavaiani, and Vincent and that K. Malek is receiving a portion of their fees; therefore, Plaintiff claims he has a stake in the litigation. (*See id.*). Defendant responds that K. Malek does not have a conflict of interest, and any bias that results from K. Malek's receipt of these fees in this matter go to credibility not admissibility. (*See* Doc. 270 at 12–14).

The fact that a party pays an expert witness an hourly fee goes to the expert's credibility not reliability. *See United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001) ("Generally, evidence of bias goes toward the credibility of a witness, not his competency to testify, and credibility is an issue for the jury."); *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1312 (10th Cir. 2007) (distinguishing between the credibility of an expert versus the reliability of the principles and methods the expert applied and concluding that payment of the expert's fee goes to credibility); *see Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1396 n.24 (D. Or. 1996). However, an expert generally must be disqualified where the expert has a direct financial interest in the case beyond simply getting paid for rendering an expert opinion and testifying about it. *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452, at *4–6 (C.D. Cal. Oct. 31, 2014) (noting a direct financial interest in a case could establish a disqualifying conflict of interest but that simply being paid a fee for expert testimony does not establish a direct financial interest).

The Court rejects Plaintiff's argument that K. Malek somehow has a direct financial interest in the case because the Defendant's other experts are affiliated with his firm, and thus, he receives a portion of their expert fee. Plaintiff points to no evidence to establish that K. Malek had a conflict of interest beyond the unremarkable proposition that the more hours the Defendant's experts worked, the more money they (and K. Malek based on the

fee agreement the experts had with Defendant) would make. Nor does Plaintiff explain why this situation—where it asserts K. Malek received a portion of the fee charged by the other experts Defendant retained—is any different than K. Malek himself being paid for his expert testimony. In short, Plaintiff does not cite any evidence that K. Malek has a direct financial interest in the litigation. Consequently, Plaintiff has not established that K. Malek has a disqualifying direct interest in this case.

### c.    Sufficient Facts and Data

Plaintiff seeks to exclude the expert opinions of Morrison, C. Malek, Cavaiani, Vincent, and K. Malek as not "based on sufficient facts or data." *See* Fed. R. Evid. 702(b); (Doc. 227 at 8 (Morrison); Doc. 238 at 14–17 (C. Malek); Doc. 241 at 15–18 (Cavaiani); Doc. 244 at 14–16 (Vincent); Doc. 247 at 18–21 (K. Malek)).

First, Plaintiff contends that the testimony by each expert must be excluded because each expert failed to give the proper weight to certain facts. The Committee Notes to Rule 702 state:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Plaintiff's position appears to be that the Court should accept Plaintiff's version of the facts and exclude the testimony of Defendant's experts because, in Plaintiff's view, they did not accord the proper weight to certain facts or that their conclusions are simply incorrect.[6] As the

---

[6] For example, Plaintiff argues, "An expert cannot narrow the scope of data considered in reaching his opinion merely because that is what they 'wish' to consider. . . . An expert must provide a reasoned basis for why they did not consider some data if their findings are to amount to 'good science' and be 'derived by scientific method.'" (Doc. 238 at 16 (quoting *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d at 959); *see also* Doc. 244 at 16 (same)). Plaintiff offers no legal support for such an assertion beyond merely snipping some language from a case articulating the legal standard applied in *Daubert* cases that is not relevant to the proposition Plaintiff asserts. As will be discussed, criticism of an expert's decision to base an opinion on some facts but not others should be challenged through the traditional means at trial, not through a *Daubert* motion. *See Daubert*, 509 U.S. at 596.

- 16 -

Committee Notes to Rule 702 suggest, that is not the correct analysis. Plaintiff's argument is for trial; it is not an appropriate ground for exclusion of expert testimony on a *Daubert* motion. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Erickson*, 2016 WL 6522805, at *6; *see also Romero By and Through Ramos v. S. Schwab Co.*, No. 15-CV-815-GPC-MDD, 2017 WL 5885543, at *17 (S.D. Cal. Nov. 29, 2017) (rejecting similar argument); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1070 (C.D. Cal. 2013) (same).

Additionally, Plaintiff argues that the opinions of K. Malek should be excluded because he relied on the opinions of Defendant's other experts in forming his expert opinions.[7] (Doc. 247 at 11–13). But, "[t]he term 'data' in Rule 702 is intended to encompass the reliable opinions of other experts." Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Thus, the Court rejects this argument as well.[8]

Morrison, C. Malek, Cavaiani, Vincent,[9] and K. Malek based their opinions on sufficient facts and data. Each expert reviewed documents and testimony elicited during

---

[7] Plaintiff also makes a reference to the bar on using expert testimony to circumvent the hearsay rules in its *Daubert* Motion to Exclude Kenneth Malek as an Expert. (Doc. 247 at 12). The Court will not rule on any hearsay objections that are not appropriately presented to it. A *Daubert* motion is not the proper vehicle to challenge hearsay.

[8] Plaintiff challenges some of Defendant's experts for relying on expert opinions it asserts should be excluded. Plaintiff contends that Cavaiani's expert opinion should be excluded because, according to Plaintiff, he relied on other experts whose opinions must be excluded, particularly C. Malek's expert testimony. (Doc. 241 at 12–13). Plaintiff also argues that Vincent relied on expert opinions that, in Plaintiff's view, must be excluded, specifically the expert opinions of Cavaiani and C. Malek. (Doc. 244 at 17–19). And Plaintiff finally argues that K. Malek's opinion must be excluded because it relies on the expert opinions of C. Malek, Morrison, and Vincent, which Plaintiff suggests should be excluded as well. (Doc. 247 at 11–13). The Court disagrees that any expert testimony by Defendant's experts should be excluded, and thus, rejects this argument.

[9] The Court notes that, in evaluating whether Vincent relied on sufficient facts and data, it considers Vincent as a rebuttal expert. Defendant offers his expert opinion to challenge Plaintiff's expert Greg Mischou ("Mischou"). (Doc. 244 at 4–5). Rebuttal experts "expose flaws" in other expert's methodology. *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1141 (9th Cir. 1999). It is for this reason that a rebuttal expert "may rely largely on other expert reports . . . and point out flaws in their methodologies or conclusions." *In re Toyota Motor Corp.*, 978 F. Supp. 2d at 1069 (citing *4.0 Acres of Land*, 175 F.3d at 1141) (allowing rebuttal witness to base expert opinion on other expert reports and a review of the record). In fact, a rebuttal expert need not conduct an "independent analysis." *See Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement (Pipeline Right-of-Way*

discovery. (*See, e.g.*, Doc 227-1 at 4–5 (Morrison); Doc. 238-1 at 3–4 (C. Malek); Doc. 241-1 at 3–4 (Cavaiani); Doc. 251-1 at 3–4 (Vincent); Doc. 247-1 at 3–4 (K. Malek)). Courts have routinely determined that an expert's opinion is based on sufficient facts or data when the expert has undertaken the type of review the experts did here. *See, e.g., United States v. Finley*, 301 F.3d 1000, 1009 (9th Cir. 2002); *Wilke v. Transp. Ins.*, No. CV-16-04055-PHX-JJT, 2019 WL 2611026, at *3 (D. Ariz. June 26, 2019); *Romero By and Through Ramos*, 2017 WL 5885543, at *17. Additionally, the Committee Notes for the 2000 Amendment to Rule 702 indicate that Rule 702's requirement that expert testimony be based on sufficient facts and data "calls for a quantitative rather than qualitative analysis." Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Morrison, C. Malek, Cavaiani, Vincent, and K. Malek each did an extensive review of the record that looked at a voluminous amount of material, satisfying Rule 702's quantitative requirement that an expert base testimony on sufficient facts or data. Plaintiff's challenges are to the quality of the expert's review; an argument that is simply not appropriate for the Court to determine on a *Daubert* motion.

As such, the Court finds that Defendant has established by a preponderance of the evidence that Morrison, C. Malek, Cavaiani, Vincent, and K. Malek each relied on sufficient facts and data in coming to their conclusions and preparing their expert reports. The Court rejects each of Plaintiff's arguments to the contrary.

### d. Relevance

Rule 702 requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Therefore, a party offering expert testimony must show a valid connection, or "fit," between the evidence and any issue in the case. *See Daubert*, 509 U.S.

---

*Servitude)*, No. 17-CV-10365, 2018 WL 3322995, at *15 (E.D. Mich. July 6, 2018). As a rebuttal witness, Vincent can rely on Mischou's report to point out flaws in Mischou's analysis or conclusion. Moreover, as in *In re Toyota Motor Corp.*, Vincent has done an extensive review of the record. Vincent relied on sufficient facts and data in rebutting Mischou's opinion.

at 591. Proffered expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (citation omitted).

### 1. Ultimate Issue

Plaintiff challenges some of the expert opinions of Morrison, C. Malek, and Cavaiani as improper because it contends that these opinions are on an ultimate issue of law. (*See* Doc. 227 at 8–9 (Morrison); Doc. 238 at 20–21 (C. Malek); Doc. 241 at 17–18 (Cavaiani)).

An expert cannot state "an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016. The rationale behind this rule is that an opinion as to an ultimate issue of law is not helpful to the jury because it does not help the jury resolve any factual issue in dispute. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citing Fed. R. Evid. 702(a) (2000)). On the other hand, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid 704(a); *see also Hangarter*, 373 F.3d at 1016 ("It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." (citation omitted)).

The line between an opinion that is a legal conclusion that addresses an ultimate issue of law and one that merely embraces a legal conclusion is not always a clear one. But, the Ninth Circuit Court of Appeals has said that an expert may not address whether certain facts mean a party has satisfied an element of the party's claim. *See Hangarter*, 373 F.3d at 1016–17; *see also Nationwide Transp. Fin.*, 523 F.3d at 1058–59 (concluding that district court did not abuse its discretion in excluding portions of expert testimony that "label the parties' actions as 'wrongful' or 'intentional' under the law" because district court found that testimony stated a legal conclusion). For example, in *Hangarter*, the Ninth Circuit Court of Appeals held that an expert's testimony did not address an ultimate issue of law because the expert "never testified that he had reached a legal conclusion that [d]efendants actually acted in bad faith (i.e., an ultimate issue of law)." *See* 373 F.3d at 1016–17. The expert's testimony in *Hangarter* appropriately embraced an ultimate issue

because the expert only opined that the defendants had "deviated from industry standards,"

a factual question—not that they acted in bad faith, a legal conclusion. *See id.*

### A. Morrison

Plaintiff asserts that Morrison rendered an improper legal conclusion on whether there was a yield agreement between Plaintiff and Defendant. (Doc. 227 at 8). Defendant responds that Morrison's testimony is instead "explaining that an 80% Target Yield across the board for all [of Plaintiff's] devices," under the circumstances, "is not in line with industry standards (again contrary to [Plaintiff]'s experts) and is not realistic in view of the differing characteristics and manufacturability of different parts." (Doc. 225 at 5). Thus, Defendant contends that this testimony would be offered to show it is unlikely there was an agreement given these circumstances. (*Id.*) The Court will not rule on this issue at this time. It is unclear exactly what testimony would be elicited at trial, and the parties disagree as to whether Morrison's past testimony was that there was no agreement or that it was unlikely, based on the facts and industry practice, that there was an agreement. Plaintiff may object during trial if it believes Morrison is offering an opinion as to an ultimate issue.[10]

### B. C. Malek

Plaintiff challenges C. Malek's references to the developmental progress of the "GEN2" and "GEN3" SJ MOSFET products as "improper fact assertions" that "tell[] the jury what result to reach." (Doc. 238 at 20–21 (quoting *Apollo Grp.*, 527 F. Supp. 2d at 962)). The Court disagrees. Nothing about these references tell the jury what result to reach on any claim or any fact at issue.

---

[10] It appears that Plaintiff also seeks to exclude Morrison's opinion that "[t]he [Plaintiff] experts' analysis of alleged late deliveries by [Defendant] is flawed [because] [Plaintiff]'s deliveries averaged 13 weeks, well below its competitors lead times for customers in the comparable tiers" as an opinion that is a conclusion of law. (Doc. 227-1 at 12; Doc. 275 at 6). Defendant suggests it offers this testimony to rebut Plaintiff's expert Lihong Wu, who suggested that Defendant's alleged failure to satisfy the ten-week lead time in the Supply Agreement was "a death nell to [Plaintiff] in the power management industry." (*See* Doc. 255 at 15 (citation omitted)). The Court will not review Plaintiff's ultimate issue argument as to this opinion (to the extent it actually raised such an argument) as it was first raised in Plaintiff's Reply Brief (Doc. 275 at 6), and thus, Defendant has not had the opportunity to respond to it. *Larson v. Johnson*, No. CIV07-0063-PCT-SMM, 2007 WL 2023485, at *4 (D. Ariz. July 12, 2007). However, Plaintiff may raise this objection at trial, if appropriate.

## C.     Cavaiani

Plaintiff makes two principal challenges as to the relevance of some of Cavaiani's opinions. First, Plaintiff contends that a portion of Cavaiani's report states an ultimate issue. (Doc. 241 at 17–18). Second, Plaintiff asserts that Cavaiani's testimony invades the province of the jury by offering "improper fact assertions." (*See id.* at 18).

It appears Cavaiani's report states an ultimate issue of law. Cavaiani opined in his report that certain of Plaintiff's projections were made "false[ly] or in reckless disregard of the truth." (Doc. 241-1 at 36). The Court finds that, like the expert in *Nationwide Transport Finance* who labeled the defendant's actions as wrongful or intentional which stated an improper legal conclusion, here too, an opinion stating that Plaintiff's projections were made falsely or in reckless disregard of the truth states an improper legal conclusion. 523 F.3d at 1058–59. Indeed, unlike the expert in *Hangarter*, who "never testified that he had reached a legal conclusion that [d]efendants actually acted in bad faith (i.e., an ultimate issue of law)," 373 F.3d at 1016, here it appears Cavaiani opines that Plaintiff actually made false statements in reckless disregard of the truth. To the extent Defendant attempts to elicit this type of testimony at trial, Plaintiff may make an objection under the appropriate circumstances.

Plaintiff also asserts that Cavaiani improperly discusses issues relating to Plaintiff's SJ MOSFET's "performance, competitiveness, and developmental status, [which] are improper fact assertions beyond the scope of offering opinions regarding 'the marketing and sales activity issues relating to [Plaintiff]'s [SJ] MOSFET products, as well as the business practices, viability, and business plan execution risk associated with those products.'" (Doc. 241 at 18 (third alteration in original) (quoting Doc. 241-1 at 2)). It is unclear how such testimony would improperly "usurp the function of the trier of fact," as Plaintiff claims. (*Id.* at 18). In any event, an expert can testify to issues of fact that the expert is familiar with so long as the testimony helps the jury. *See In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d at 962; *Bourdon v. Mountain W. Farm Bureau Mut. Ins.*, No. CV 12-97-M-DWM, 2013 WL 4446968, at *6 (D. Mont. Aug. 15, 2013). The Court finds

1   Cavaiani's discussion of the performance, competitiveness, and developmental status of

2   Plaintiff's SJ MOSFET will help the jury to determine whether Plaintiff's projections were

3   faulty, and if so, whether Plaintiff knew that they were faulty or that Plaintiff presented

4   Defendant with projections that were likely to have been made in reckless disregard for the

5   truth.

6          Thus, at this time, the Court does not exclude Cavaiani from offering any specific

7   expert testimony at trial. However, should Defendant attempt to elicit testimony from

8   Cavaiani on an ultimate issue at trial, Plaintiff may make an appropriate objection.

9                          **2.      Alleged Repudiation of Expert Opinions**

10         Plaintiff suggests Morrison, C. Malek, and K. Malek must be excluded from

11  testifying on opinions that they "repudiated" during their depositions because those

12  opinions would not be helpful to the jury. (*See, e.g.*, Doc. 227 at 4 (Morrison); Doc. 238 at

13  5 (C. Malek); Doc. 247 at 5 (K. Malek)). It is unclear what legal authority Plaintiff rests

14  this argument on, but any assertion that an expert repudiated his opinion during Plaintiff's

15  cross-examination goes to weight not admissibility, an issue Plaintiff can explore during

16  trial.

17  **IV.    MOTIONS TO SEAL**

18         Plaintiff and Defendant have filed various motions to seal in connection with

19  Plaintiff's *Daubert* Motions. (*See* Docs. 237; 240; 243; 246; 249; 258; 262; 265; 276; 280;

20  289; 291; 292). Because review of the unredacted materials was unnecessary to the Court's

21  resolution of Plaintiff's *Daubert* Motions, the requests to file unredacted versions of these

22  documents into the record are denied as unnecessary. *See Maui Elec. Co. v. Chromalloy*

23  *Gas Turbine, LLC*, No. CIV. 12-00486 SOM, 2015 WL 1442961, at *16 (D. Haw. Mar.

24  27, 2015). All documents filed lodged under seal will thus remain lodged under seal.

25  **V.     CONCLUSION**

26         Based on the foregoing,

27         **IT IS ORDERED** that Plaintiff's *Daubert* Motion to Exclude Allan Morrison as an

28  Expert (Doc. 227) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Daubert* Motion to Exclude Charles Malek as an Expert (Doc. 238) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Daubert* Motion to Exclude Randy Cavaiani as an Expert (Doc. 241) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Daubert* Motion to Exclude Robert Vincent as an Expert (Doc. 244) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Daubert* Motion to Exclude Kenneth Malek as an Expert (Doc. 247) is **DENIED**.

**IT IS FURTHER ORDERED** that the following motions to seal relating to Plaintiff's *Daubert* Motions (Docs. 237; 240; 243; 246; 258; 262; 265; 276; 280; 289; 291; 292) are **DENIED** for the reason indicated above. The Clerk of Court shall not unseal the related documents and shall instead leave Docs. 239; 242; 245; 248; 257; 259; 263; 266; 269; 272; 277; 281 lodged under seal.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal Doc. 244-1 (Doc. 249) is **DENIED** for the reason indicated above. The sealed, lodged exhibit (Doc. 244-1) shall be stricken but remain under seal.

Dated this 30th day of September, 2019.

James A. Teilborg
Senior United States District Judge

- 23 -