WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IceMOS Technology Corporation, | No. CV 17-2575-PHX-JAT |
| Plaintiff/Counterdefendant, | **ORDER** |
| v. | |
| Omron Corporation, | |
| Defendant/Counterclaimant. | |

On December 20, 2018, this Court granted Plaintiff IceMOS Technology Corporation ("IceMOS") and Defendant Omron Corporation ("Omron")'s request for a protective order. (Doc. 87). Pending before the Court now is IceMOS's Motion to Modify the Protective Order (Doc. 314). Omron filed an Opposition to Plaintiff's Motion to Modify the Protective Order (Doc. 284), and IceMOS filed a Reply in Support of its Motion to Modify the Protective Order (Doc. 316). The Court now rules on the motion. The Court will not address IceMOS's Motion to Seal (Doc. 313) its original Motion to Modify (Doc. 254) because the Court has only relied on the redacted Motion to Modify the Protective Order (Doc. 314) in reaching its conclusion. The same is true for the Response (Doc. 284).

**I.    Background**

Pursuant to the parties' stipulation, the Court entered a protective order that permitted the parties to designate materials as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." (Doc. 86-1 at 3–4). The protective order provides that material so designated "shall not be used or disclosed by the parties, counsel for the parties, or any

other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation and any appeals thereof." (*Id.* at 3).

On August 19, 2019, IceMOS filed a Motion to Modify the Protective Order, requesting to use information from confidential documents produced by Omron in a new lawsuit against third party Shindengen Electric Manufacturing Co., Ltd. ("ShinDengen") for "theft of trade secrets, fraud, fraudulent inducement, patent infringement and civil conspiracy." (Doc. 314 at 2, 8). IceMOS claims that those documents prove that ShinDengen "conspired with Omron in systematic efforts to misappropriate, misuse and profit illegally from the unauthorized use of IceMOS's Proprietary Information." (*Id.* at 2). Accordingly, IceMOS moves to amend Paragraph 5(a) of the protective order to say:

> Confidential Information shall not be used or disclosed by the parties, counsel for the parties, or any other persons identified in subparagraph (b) for any purpose whatsoever other than use in this *or any collateral litigation (and any appeals thereof). Any use of material designated as Confidential Information in this case in collateral litigation is conditioned upon the material being designated for production in the collateral litigation with the same level of confidentiality as designated in this action.*

(*Id.* at 7) (emphasis added).

### A. Legal Standard

Federal Rule of Civil Procedure ("Rule") 26(c) permits the Court to issue protective orders "for good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during the discovery process. Fed. R. Civ. P. 26(c)(1). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

A party seeking the modification of a protective order to permit protected materials to be discoverable in collateral litigation must follow a three-step process. *See Darby v. Safeco Ins. Co. of Am.*, 2012 WL 5512576, at *2 (D. Ariz. Nov. 14, 2012). "As an initial matter, the collateral litigant must demonstrate the relevance of the protected discovery to

the collateral proceedings and its general discoverability therein." *Foltz*, 331 F.3d at 1132. "Such relevance hinges 'on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.'" *Id.* (citation omitted). Second, the court must be satisfied that "the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Id.* "The court that issued the [protective] order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery." *Id.* Finally, if the court modifies the protective order to permit the discovery, responsibility shifts to the court overseeing the collateral litigation to determine whether the collateral litigants may ultimately obtain the materials in discovery. *Id.* at 1132-33; *see also Darby*, 2012 WL 5512576, at \*2.

The interests of judicial economy "strongly favor access to discovery materials to meet the needs of parties engaged in collateral litigation." *Id.* at 1131. "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* Thus, when determining whether to modify the protective order, the court must "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133. A party's interest in preserving secrecy against the public "can be accommodated by placing the collateral litigants under the same restrictions on use and disclosure contained in the original protective order." *Id.* (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)).

**B.**     **Analysis**

1.     Relevance Analysis

IceMOS bears the burden of showing that the confidential material in question is relevant to collateral litigation. *See Foltz*, 331 F.3d at 1132. Although IceMOS attached to its motion a list of hundreds of confidential documents it apparently plans to use in a new suit against ShinDengen, it never cited or discussed any of them, (*compare* Doc. 314, n.1–29, *with* Doc. 314-1)—particularly neglecting to explain how these documents would

support specific claims against ShinDengen. (*See* Doc. 314 at 2–6). Rather, IceMOS broadly referred to the whole list (Doc. 314-1) *one* time in its introduction, failing to discuss the documents' role or substance at even a general level. (Doc. 314 at 2).

IceMOS did, however, cite several exhibits it had previously attached to its Motion to Show Cause (Doc. 177), which this Court denied on three separate occasions as an untimely request for more discovery. (*See* Doc. 179, 184, 196). Omron thus argues that IceMOS now seeks in bad faith to obtain, by raising identical claims in a new case, discovery that this Court has already repeatedly refused. (Doc. 284 at 6). Although this Court notes Omron's concern, it would reach beyond its authority in this matter to attempt to evaluate whether either IceMOS's motives or collateral estoppel might ultimately bar the hypothetical collateral litigation. This Court is tasked only with deciding the motion before it, which requires assessing the relevance of the confidential material to collateral litigation. *See Foltz*, 331 F.3d at 1132.

And, in this case, IceMOS *does* use some confidential material to support its general allegation that Omron and Shindengen misappropriated its designs and proprietary processes for use with their own products. (*See* Doc 314 at 5–6, n.22–29). Still, this Court lacks clear and complete knowledge of IceMOS's specific claims against Shindengen because IceMOS has not yet filed a complaint. Therefore, it is impossible at this point to opine the relevance of confidential material to litigation that does not yet exist. *See Avago Techs. Fiber IP (Singapore) PTE., Ltd. v. IPtronics, Inc.*, No. C 10-02863 EJD PSG, 2011 WL 5975243, at *2 (N.D. Cal. Nov. 29, 2011) (calling modification to a protective order premature when "there are no collateral proceedings pending for which the relevance of the disputed information may be evaluated"). So, in addition to requiring more explanation of the list of documents attached as "Exhibit 1" to IceMOS's motion, this Court must wait for IceMOS to initiate proceedings against Shindengen before it can even assess the relevance of the confidential material.

IceMOS argues, however, that the relevance standard in *Foltz*[1] does not apply here.

---

[1] 331 F.3d.

(Doc. 316 at 2). IceMOS attempts to distinguish its case on the grounds that it is not an intervening third party but an original party with current access to the confidential information. (Doc. 316 at 2–3). This argument fails. Like here, the parties in *Foltz* acquired protective orders to "keep secret all [] 'confidential information' produced . . . in discovery . . . ." 331 F.3d at 1128. Later, a private intervenor sought to use their confidential discovery in a separate lawsuit. *Id.* The Ninth Circuit directed the district court to discern whether the confidential material related enough to the collateral proceeding so that relaxing the protective order could prevent "duplicative discovery." *Id.* at 1132–34. Similarly, IceMOS and Omron agreed to a protective order for their confidential business material, (Doc. 86), and IceMOS moved to modify the order so that it could use that material in a separate lawsuit against Shindengen. (Doc. 314). The relevant question is not whether IceMOS already possesses the material, but whether the Court should permit IceMOS to share it in a different lawsuit (assuming the collateral court finds no other discovery issues) in order to avoid duplicative discovery. *See Foltz*, 331 F.3d at 1134 ("If any properly protected [] discovery is relevant to [a] collateral suit[], the district court should [] modif[y] the protective order . . . ."). Hence, contrary to IceMOS's contention, *Foltz* applies here because it decides a materially analogous issue.

In conclusion, IceMOS has not currently met its burden of showing that the confidential material in question is relevant to collateral litigation.

2.    Balance of Interests

When determining whether to modify a protective order, the Court must "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Foltz*, 331 F.3d at 1133. Alternatively, on balance, the Court finds that IceMOS has failed to overcome Omron's reliance interest because it simply has not shown a threat of duplicative discovery. (*See* Doc. 314). To do so—as discussed above—it must connect the confidential material to specific claims in an existing complaint.

As for Omron's reliance interest, the parties did not create a "blanket protective

order" that "[wa]s by nature overinclusive" and decreased their reliance on it. *See Foltz*, 331 F.3d at 1133. In fact, the protective order specifically prohibits "mass, indiscriminate, or routinized designations" so that "material . . . for which protection is not warranted [is] not swept unjustifiably within the ambit of this Agreement . . . ." (Doc. 86-1 at 2–3). Omron and IceMOS narrowly tailored the protective order to protect only material that, if in the wrong hands, could harm their businesses. They specifically included "trade secrets, proprietary information or other sensitive intellectual property information" and "commercially or competitively sensitive information . . . that the party has utilized or intends to utilize to maintain a competitive advantage . . . ." (*Id.* at 2). The protective order further stipulates that the parties must limit "any such designation [of confidentiality] to *specific* material that qualifies under [its] standards," even if that means only labeling certain *parts* of the material "confidential." (*Id.* at 2–3) (emphasis added). The narrow scope and purpose of the protective order increased Omron's reasonable reliance on it. Without guaranteed protection of its sensitive business information and trade secrets, Omron likely would not have disclosed so much. Thus, its reliance interest vastly outweighs the unsubstantiated possibility that IceMOS would have to engage in duplicative discovery.

In response, IceMOS argues that Omron "has not asserted . . . that its reliance interests will be affected or harmed by the disclosure of any particular documents produced in discovery in collateral litigation against ShinDengen." (Doc. 316 at 5). The court in *Foltz*, however, did not speculate about the potential damage to a party's reliance interest in collateral litigation, but only asked if the party had a reliance interest in the first place. *See* 331 F.3d at 1133. Because Omron has relied on the protective order, IceMOS must counter Omron's interest with an even stronger interest in avoiding duplicative discovery. *See id.* But IceMOS has failed to do so. (*See* Doc. 314). Of course, as IceMOS contends, Omron *could* still keep its confidential material hidden from the public "by placing the collateral litigants under the same restrictions . . . contained in the original protective order." *See id.* at 1133 (quoting *United Nuclear*, 905 F.2d at 1428). But until IceMOS

"demonstrates the relevance of the protected discovery to the collateral proceedings," this Court will not modify an official, fairly-negotiated protective order that has reasonably induced Omron's reliance. *See id.* at 1132.

Therefore, under present circumstances, IceMOS has failed to overcome Omron's reliance interest with the policy against duplicative discovery. This finding, however, does not preclude IceMOS's ability to do so in the future.

**C.     Conclusion**

Because IceMOS has failed to show that the confidential material is relevant to the collateral litigation such that modifying the protective order to permit its discovery will avoid a substantial amount of duplicative discovery, IceMOS has not established, as of now, that it is entitled to modification of the protective order.

Thus, **IT IS ORDERED** denying IceMOS's Motion to Modify the Protective Order for Confidential Information (Doc. 314) without prejudice.

**IT IS FURTHER ORDERED** denying the Motion to Seal the Motion to Modify the Protective Order (Doc. 313) (as indicated above). The Clerk of the Court shall leave Doc. 254 under seal but strike it.

**IT IS FURTHER ORDERED** denying the Motion to Seal the Response to the Motion to Modify the Protective Order (Doc. 285) (as indicated above). The Clerk of the Court shall leave Doc. 286 lodged, under seal.

Dated this 17th day of October, 2019.

James A. Teilborg
Senior United States District Judge