**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IceMOS Technology Corporation,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>Omron Corporation,<br><br>    Defendant/Counter-Claimant. | No. CV-17-02575-PHX-JAT<br><br>**AMENDED ORDER**[*] |

Pending before the Court are Omron Corporation's ("Defendant") motions to preclude testimony of IceMOS Technology Corporation's ("Plaintiff") experts Walter Bratic (Doc. 293) and Uzi Sasson (Doc. 299) (collectively, "Defendant's *Daubert* Motions"). The Court now rules on the motions.[1]

**I. BACKGROUND**

On September 4, 2019, Defendant filed its Motion to Preclude Testimony of Plaintiff's Expert Walter Bratic (Doc. 293). Plaintiff responded on September 19, 2019 (Doc. 332), and Defendant filed its Reply on September 25, 2019 (Doc. 337).

---

[*] Amending (Doc. 356 at 1) to add footnote 1, *see infra* p. 1 note 1, and (Doc. 356 at 8:4) to read Doc. 301 rather than Doc. 299, *see infra* p. 8:10.

[1] Defendant's request for oral argument (Doc. 299 at 1) and Plaintiff's request for oral argument (Doc. 332 at 1) are denied because the issues have been fully briefed and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Inv'rs Grp. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2019 WL 1099882, at *1 n.1 (D. Ariz. Mar. 8, 2019).

On September 5, 2019, Defendant filed its Motion to Preclude Testimony of Plaintiff's Expert Uzi Sasson (Doc. 299). Plaintiff responded on September 19, 2019 (Doc. 333), and Defendant filed its Reply on September 26, 2019 (Doc. 340).

The parties also filed various motions to seal relating to Defendant's *Daubert* Motions.

### a. Facts

Plaintiff is in the business of selling super junction metal oxide semiconductor field-effect transistors ("MOSFETs"). (Doc. 25 at 2). Plaintiff needs fabrication services to produce these products. (*Id.*). In 2007, Defendant purchased a wafer fabrication facility and shortly thereafter suggested to Plaintiff that Defendant and Plaintiff should enter into business together. (*Id.*). After negotiations, the two parties eventually came to an agreement ("Supply Agreement") on February 28, 2011. (*See id.*). The Supply Agreement provided that Defendant would "perform the fabrication requested by Plaintiff" and that Defendant would "fully resource the development of all generations of" Plaintiff's super junction MOSFET ("SJ MOSFET") for the duration of the agreement. (*Id.*; *see also* Doc. 59 at 10; Doc. 60 at 16). On March 6, 2018, the Supply Agreement terminated. (Doc. 60 at 37). Plaintiff alleges breach of contract and fraud and seeks actual damages. (Doc. 59 at 33–38). Specifically, Plaintiff alleges damages for lost profits and lost development support. (*See* Doc. 59 at 33–35). The Court has dismissed Plaintiff's claims for lost profits on summary judgment but denied summary judgment as to the lost development support claim. (Doc. 355).

## II. LEGAL STANDARD

When a party seeks to offer an expert opinion, the party must show that the expert's opinion satisfies the requirements set forth by Federal Rule of Evidence 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Trial judges must make a preliminary assessment on whether expert testimony is admissible. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* The Rule 702 inquiry is "flexible" and its "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

The party that offers expert testimony must show that the expert testimony is admissible under Rule 702. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The requirements set by Rule 702 are conditions for determining whether expert testimony is admissible. Thus, Federal Rule of Evidence 104(a) requires that the party offering the expert testimony show that the expert testimony is admissible under Rule 702 by the preponderance of the evidence. *See* Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592–93 & n.10; *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

### III. ANALYSIS

Defendant asserts that the expert testimony of Walter Bratic ("Bratic") and Uzi Sasson ("Sasson") should be excluded because their testimony is irrelevant and unreliable. (Doc. 293 (Bratic); Doc. 299 (Sasson)). The Court will evaluate each argument in turn.

#### a. Relevance

Because the vast majority of the testimony Plaintiff sought to offer through Bratic and Sasson was on lost profits and the Court has granted summary judgment in favor of Defendant on Plaintiff's lost profits claim, (Doc. 355), the Court must preliminarily decide if Bratic and Sasson have any other relevant expert testimony to offer. Rule 702 requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Therefore, a party offering expert testimony must show a valid connection, or "fit," between the evidence and any issue in the case. *See Daubert*, 509 U.S. at 591. Proffered expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (citation omitted).

Both Bratic and Sasson can apply their expertise to relevant issues. Bratic estimated the value of Plaintiff's lost development support claim. (Doc. 293-1 at 47–49). Because the Court has concluded that lost development support damages may be available here, (Doc. 355), Bratic's expert testimony may be fit for this case on that issue. If Plaintiff elicits irrelevant testimony from Bratic at trial, Defendant can make an appropriate objection at that time.

Sasson's expert testimony is also fit on issues unrelated to lost profits. Sasson's expert testimony includes "opinions regarding the semiconductor foundry model, forecasting of wafers, the relationship between a foundry and customer, global supply chain for semiconductors, and wafer manufacturing and supply agreements." (Doc. 299-1 at 4). Given Sasson's expertise in these areas, although the Court cannot theorize every issue that Sasson's expertise may be relevant to, at this time, the Court cannot say his testimony is wholly unfit to the issues presented in this case. Indeed, Defendant has not argued that Sasson's testimony as to the semiconductor industry or the products themselves would not be relevant to any issue at trial. (*See* Doc. 299 at 18–19; Doc. 340 at 14). However, the Court does not foreclose Defendant from making an appropriate objection relating to Sasson's testimony on any issue he may testify to.

Accordingly, the Court concludes that Bratic and Sasson may offer expert testimony that may help the jury understand evidence or decide a fact at issue, and thus, Plaintiff has shown their testimony is relevant.

    **b.**    **Reliability**

In analyzing reliability, the focus is on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95. Thus, "the court's 'task . . . is to analyze not what the experts say, but what basis they have for saying it.'"

*Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). "Rule 702 grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999).

"[T]he relevant factors for determining reliability will vary from expertise to expertise . . . ." *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* An expert's opinion can be based on the "application of extensive experience." *See id.*; *see also Kumho Tire Co.*, 526 U.S. at 150 ("[T]he relevant reliability concerns may focus upon personal knowledge or experience."); *Aloe Vera of Am. Inc. v. United States*, No. CV-99-01794-PHX-JAT, 2014 WL 3072981, at *11 (D. Ariz. July 7, 2014) ("Experiential expert testimony . . . does not 'rely on anything like a scientific method.'" (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007))).

The alleged "faults in [an expert's] use of [a particular] methodology . . . go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (second alteration in original) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 596.

### 1. Bratic

Defendant argues that Bratic's expert opinions regarding lost profits and lost development support damages are unreliable. (Doc. 293 at 12–21). Any argument that Bratic's lost profits analysis is unreliable has been rendered moot by the Court's conclusion that lost profits are not available to Plaintiff. (Doc. 355). Thus, the Court will only evaluate the reliability of Bratic's expert testimony on Plaintiff's lost development support claim.

Specifically, Defendant asserts that Bratic's opinion relating to development support costs for Gen 1 and Gen 2 SJ MOSFETs is based on a "misunderstanding" of

certain evidence. (Doc. 293 at 20–21). Defendant also claims that the calculations relating to the Gen 3 SJ MOSFETs are not supported by any calculation or the underlying evidence. (*Id.*).

Defendant's argument fails. Bratic's experience includes "analyzing market opportunities and trends for various semiconductor products, structural changes in this industry[,] and analysis of technologies related to semiconductor manufacturing and testing equipment and semiconductor manufacturing processes." (Doc. 293-1 at 4). The Committee Notes to Rule 702 read, "Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Indeed, the Committee Notes continue, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* Therefore, Bratic may rely on his extensive experience in the semiconductor industry to support his calculations.

Moreover, the Committee Notes also state:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

*Id.* Defendant's main contention appears to be that the Court should accept its view of the facts and exclude Bratic's expert testimony. Indeed, Defendant argues that Bratic's opinion on damages for the Gen 1 and Gen 2 products is based on a misunderstanding of the evidence. (Doc. 293 at 20–21). And, as for Bratic's opinion as to damages relating to the Gen 3 product, Defendant argues Bratic's opinion is unreliable because Bratic did not account for certain evidence. (*Id.*). The Court has already rejected this type of argument in its order denying Plaintiff's *Daubert* motions. (Doc. 343 at 16–18). As the Committee Notes indicate, disagreement over which facts an expert decided to rely on is not an

appropriate ground for exclusion of expert testimony. *See Daubert*, 509 U.S. at 596. Rather, any perceived fault in Bratic's methodology goes to weight, not admissibility.

Accordingly, the Court finds that Plaintiff has shown by the preponderance of the evidence that Bratic's expert testimony on lost development support damages is reliable.

### 2. Sasson

As noted above, Sasson may not testify as to lost profits damages, but he may testify as to general matters related to semiconductor products, including Plaintiff's SJ MOSFETs, and the semiconductor industry based on his fifteen years of experience in the semiconductor industry. (*See* Doc. 299-1 at 5). As stated, "experience alone—or experience in conjunction with other knowledge, skill, training or education" is sufficient foundation for expert testimony. Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Consequently, the Court finds that Sasson's expert testimony on general issues relating to semiconductor products, like the SJ MOSFET, and the semiconductor industry is reliable because Sasson may rely on his extensive experience in discussing these issues. It is unclear at this time what particular issues Plaintiff may offer Sasson's expertise for, and thus, Defendant may object to the reliability of specific expert testimony Plaintiff elicits from Sasson if appropriate.

## IV. MOTIONS TO SEAL

Plaintiff and Defendant have filed various motions to seal in connection with Defendant's *Daubert* Motions. (*See* Docs. 320; 322; 330; 347; 348). Because review of the unredacted materials was unnecessary to the Court's resolution of Defendant's *Daubert* Motions, the requests to file unredacted versions of these documents into the record are denied as unnecessary. *See Maui Elec. Co. v. Chromalloy Gas Turbine, LLC*, No. CIV. 12-00486 SOM, 2015 WL 1442961, at *16 (D. Haw. Mar. 27, 2015). All documents filed lodged under seal will thus remain lodged under seal.

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Preclude Testimony of Plaintiff's Expert Walter Bratic (Doc. 293) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Preclude Testimony of Plaintiff's Expert Uzi Sasson (Doc. 299) is **DENIED**.

**IT IS FURTHER ORDERED** that the following motions to seal relating to Defendant's *Daubert* Motions (Docs. 320; 322; 330; 347; 348) are **DENIED** for the reason indicated above. The Clerk of Court shall not unseal the related documents and shall instead leave Docs. 295; 301; 331; 339; 342 lodged under seal.

Dated this 15th day of November, 2019.

James A. Teilborg
Senior United States District Judge