**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IceMOS Technology Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Omron Corporation,<br><br>Defendant. | No. CV-17-02575-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff IceMOS Technology Corporation's Motion to Strike and Preclude Defendant's Contract Invalidity Defense (Doc. 468). The Motion has been fully briefed. (Doc. 468; Doc. 473; Doc. 476). The Court now rules.

**I.     BACKGROUND**

A contested issue of fact listed in the Joint Proposed Final Pretrial Order is "[w]hether the Supply Agreement is a valid and enforceable contract." (Doc. 457-1 at 5). Specifically, Defendant's position is:

> The Supply Agreement provides that [Plaintiff] was not required to place any orders and [Defendant] was not required to accept any orders, as set forth in Section 4.1 of the Supply Agreement, making it unenforceable. Furthermore, however, [Plaintiff] has asserted that [Defendant] was required to accept [Plaintiff]'s orders and was not free to reject them, despite the language in Section 4.1 of the Supply Agreement that [Defendant] could reject orders. *See, e.g.*, Doc. 308 at ¶24. If this [Plaintiff] interpretation of the Supply Agreement is correct, then there is no enforceable contract because it is an indefinite quantities contract.

(Doc. 457-1 at 5–6). Plaintiff asserts that the validity and enforceability of the Supply Agreement—the parties' contract—had never been contested until Plaintiff received Defendant's "initial draft of the Proposed Joint Final Pretrial Order" on February 7, 2020. (Doc. 468 at 5). Plaintiff argues that the Court must prohibit Defendant from contesting the validity and enforceability of the Supply Agreement. (*Id.* at 8).

Defendant responds that Plaintiff misunderstands Defendant's argument. (Doc. 473 at 2). Defendant claims it only argues that, if the finder of fact concludes that the Supply Agreement restricts Defendant's ability to reject Plaintiff's purchase orders, then the Supply Agreement is an invalid requirements contract. (*Id.* at 7–9). At any rate, Defendant claims the Motion to Strike (Doc. 468) is improper as it was not required to disclose any defense relating to the validity of the Supply Agreement under General Order No. 17-08 (D. Ariz. Nov. 1, 2018). And, even if the General Order did require Defendant to disclose such a defense, Defendant claims it did so as soon as Plaintiff proffered its view that the Supply Agreement limits Defendant's ability to reject Plaintiff's purchase orders. (Doc. 473 at 9). In response to that point, Plaintiff asserts that Defendant has known that Plaintiff asserts that Defendant breached the Supply Agreement at least since filing of the Second Amended Complaint (Doc. 59), in which Plaintiff alleged that Defendant breached the Supply Agreement "by refusing to accept new purchase orders from [Plaintiff]." (Doc. 476 at 6–7 (citing Doc. 59 at 31, 33–34)).

## II.   LEGAL STANDARD

District of Arizona Local Rule of Civil Procedure 7.2(m) governs motions to strike. It provides, "[u]nless made at trial, a motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rules of Civil Procedure 12(f), 26(g)(2) or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1).

## III.   ANALYSIS

The Court begins by addressing terminology. The Court finds that there are two specific defenses listed by Defendant in the Joint Proposed Final Pretrial Order (Doc. 457-

- 2 -

1). One defense is that the Supply Agreement is unenforceable as "[t]he Supply Agreement provides that [Plaintiff] was not required to place any orders and [Defendant] was not required to accept any orders, as set forth in Section 4.1 of the Supply Agreement." (*Id.* at 5–6). The Court will refer to this defense as the "Complete Invalidity Defense." Defendant also stated:

> Furthermore, however, [Plaintiff] has asserted that [Defendant] was required to accept [Plaintiff]'s orders and was not free to reject them, despite the language in Section 4.1 of the Supply Agreement that [Defendant] could reject orders. *See, e.g.*, Doc. 308 at ¶24. If this [Plaintiff] interpretation of the Supply Agreement is correct, then there is no enforceable contract because it is an indefinite quantities contract.

(Doc. 457-1 at 6). The Court will refer to this defense as the "Contingent Invalidity Defense." The Court now addresses each defense.

### a. Complete Invalidity Defense

The Court will grant the Motion to Strike (Doc. 468) as to the Complete Invalidity Defense. Defendant not only admitted that the Supply Agreement is a valid and enforceable contract, (Doc. 60 at 52), but it also pleaded that the Supply Agreement is a valid and enforceable contract as part of its own breach of contract counterclaim, (*see* Doc. 28 at 28). Therefore, Defendant has made judicial admissions as to the validity and enforceability of the Supply Agreement. Defendant is estopped from taking the inconsistent position, on the eve of trial, of asserting there is not a valid and enforceable contract. *See Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065 (D. Ariz. 1997); *John v. Timm*, 190 N.W. 890, 891 (Minn. 1922) ("When the answer admitted the contract, its existence and validity were established." (citing *Campbell v. Wilcox*, 77 U.S. (10 Wall.) 421 (1870))).

The final pretrial order supersedes each of the parties' prior pleadings and controls the course and scope of the action. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *see* Fed. R. Civ. P. 16(d) ("After any conference under this rule, the court should issue an order reciting the action taken. This order controls the course of the action unless

the court modifies it."). As a result, typically the pleadings are merged into the final pretrial order. *See Session v. Romero*, No. 14-CV-02406-PAB-KLM, 2019 WL 190987, at *5 (D. Colo. Jan. 14, 2019). Because Defendant has included a defense that is diametrically opposed to the pleadings, the Court will not accept the Joint Proposed Final Pretrial Order (Doc. 457-1), and it will be stricken from the record.[1]

Defendant must revise the Proposed Final Pretrial Order and remove any reference to the Complete Invalidity Defense. The parties must then finalize and file the revised version of the joint proposed final pretrial order by **Friday, June 5, 2020**.

### b.     Contingent Invalidity Defense

The Motion to Strike (Doc. 468) as to the Contingent Invalidity Defense will be denied. To the extent Defendant was required to disclose the Contingent Invalidity Defense, the Court finds that any sanction—including striking of the defense—for failure to disclose would be unjust.

### 1.     Procedural Propriety of the Motion to Strike under Local Rule 7.2(m)

Defendant first claims Plaintiff's Motion to Strike (Doc. 468) is procedurally improper. The Court disagrees.

Local Rule 7.2(m)(1) provides that a party may move to strike any part of a filing if it is prohibited by rule or court order. Plaintiff asserts that Defendant did not properly disclose the invalidity defense under General Order No. 17-08. (Doc. 468 at 7). General Order No. 17-08 requires the parties to provide "mandatory initial discovery responses," and it "sets forth the categories of information that must be provided." Gen. Order No. 17-08, at 2. Specifically, General Order No. 17-08 provides that the parties "must provide relevant legal theories in response to paragraph B.4 below," which states, "[f]or each of

---

[1] Defendant claims that its position on the validity and enforceability of the Supply Agreement does not include that it is invalid and unenforceable on its face. (Doc. 473 at 2–3). In other words, Defendant asserts that it did not include the Complete Invalidity Defense in the Joint Proposed Final Pretrial Order (Doc. 457-1). The language that Defendant included in the Joint Proposed Final Pretrial Order (Doc. 457-1) contradicts that assertion. Because a final pretrial order supersedes the pleadings, the Court will not risk allowing a defense that is diametrically opposed to the pleadings go to trial.

your claims or defenses, state the facts relevant to it and the *legal theories* upon which it is based." *Id.* at 2, 5 (emphasis added).

Accordingly, the Court must determine what General Order No. 17-08 means when it says a party must disclose "the legal theories" upon which its "claims or defenses" are "based." *Id.* at 5. To start, the plain language of General Order No. 17-08 indicates that it requires disclosure of the legal theories that support "[a] defendant's stated reason why the plaintiff . . . has no valid case." *Defense*, *Black's Law Dictionary* (11th ed. 2019). In other words, General Order No. 17-08 requires defendants to explain the legal theories in support of any defense—that is, why the plaintiff should not prevail.

Arizona Rule of Civil Procedure 26.1 supports this reading. Rule 26.1 uses the same operative language as General Order No. 17-08; it provides that a party must disclose "the legal theory on which each of the disclosing party's claims or defenses is based." Ariz. R. Civ. P. 26.1(a)(2). That requirement means that the parties must give "adequate notice of what arguments will be made." *Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 943 P.2d 793, 800 (Ariz. Ct. App. 1997) (interpreting Arizona Rule of Civil Procedure 26.1(a)'s disclosure requirement). "[T]he disclosure statement is the primary vehicle by which the parties are informed of their opponent's case," and thus, "it should fairly expose the facts and issues to be litigated." *Bryan v. Riddel*, 875 P.2d 131, 136 (Ariz. 1994).

Therefore, General Order No. 17-08 requires parties to "fairly expose the facts and issues to be litigated" within their initial discovery response and provide "adequate notice of what arguments will be made." *Bryan*, 875 P.2d at 136; *Clark Equip. Co.*, 943 P.2d at 800. An issue that Defendant now apparently is litigating is the validity and enforceability of the Supply Agreement. General Order No. 17-08 required disclosure of that argument.

The Court rejects Defendant's attempt to avoid its disclosure obligations by arguing that it was only required to disclose affirmative defenses. (*See* Doc. 473 at 7). The General Order indicates each legal theory for any defense must be disclosed. As noted, a defense includes any argument that illustrates why the plaintiff should not prevail. In fact, Defendant's own legal authority cuts against its position. (*See id.*). While Defendant is

correct that "[a] *defense* which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense," (*id.* (emphasis added) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002))), it is indeed a *defense*, and thus, must be disclosed. Stated differently, the argument that the plaintiff cannot meet the elements of its claim is a defense. *Zivkovic*, 302 F.3d at 1088; *see Defense*, *Black's Law Dictionary*, *supra*.

The key issue here is whether Defendant can contest whether the Supply Agreement is a valid and enforceable agreement if the Supply Agreement limits Defendant's ability to reject purchase orders, as Plaintiff contends. If Defendant is right that that interpretation would render the contract unenforceable, then Plaintiff cannot establish its breach of contract action. That argument is therefore clearly a defense as it is a reason why Plaintiff should not prevail. General Order No. 17-08 required Defendant to disclose the Contingent Invalidity Defense.

### 2. Whether Sanctions Are Appropriate

While Defendant asserts it properly disclosed the Contingent Invalidity Defense under General Order No. 17-08, (Doc. 473 at 8–10), the Court finds that, even if Defendant did violate General Order No. 17-08, sanctions would not be just. The Court will therefore deny the Motion to Strike (Doc. 468).

A violation of General Order No. 17-08 is sanctionable under Federal Rule of Civil Procedure 37(b)(2). Gen. Order No. 17-08, at 4. Under Rule 37(b)(2), the court "may issue further just orders" for sanctionable conduct, including prohibiting a "disobedient party from supporting or opposing designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(A)(ii). An order sanctioning a party under Rule 37(b)(2) must be "just." *Id.*; *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001). The court is not required to order sanctions even where the court has the authority to do so under Rule 37(b)(2). *See* Fed. R. Civ. P. 37(b)(2)(A) (providing that the court "may" issue a sanction for failure to obey a discovery order); *Fontana Prods. Inc. v. Spartech Plastics Corp.*, 6 F. App'x 591, 594 (9th Cir. 2001) (stating that Rule 37(b)(2) grants district courts "broad discretion" on whether to order sanctions and how to shape them).

As noted above, General Order No. 17-08 requires: "For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based." Gen. Order No. 17-08, at 5. In response, both parties incorporated the pleadings and briefly elaborated on their claims and defenses. (Doc. 419-2 at 17–21; Doc. 468-1 at 10).

Neither party offered a thorough exposé of the legal theories in support of their claims and defenses as it relates to Plaintiff's breach of contract claim. The Second Amended Complaint alleges that "[Defendant] has further breached the Supply Agreement by refusing to accept new purchase orders from [Plaintiff], in violation of, *inter alia*, §§ 2.0, 4.15 and 6.2 of the Supply Agreement." (Doc. 59 at 31). Plaintiff asserted in its mandatory initial discovery responses that Defendant breached the Supply Agreement by "refusing to accept new purchase orders from [Plaintiff]." (Doc. 419-2 at 18). Defendant denied all of Plaintiff's breach of contract allegations. (Doc. 60 at 49–54).

It appears Defendant did not expressly articulate the Contingent Invalidity Defense until summary judgment when Plaintiff responded to Defendant's assertion that "there is no express limitation as to [Defendant]'s ability to reject purchase order[s] placed by [Plaintiff]." (Doc. 308 at 16). Plaintiff asserted, in response, that Defendant does not have "an unfettered right to reject purchases orders from [Plaintiff]." (*Id.*). It seems that this exchange was the first time the parties disputed whether the Supply Agreement's provisions allow Defendant to reject any purchase order for any reason.

To the extent Defendant violated General Order No. 17-08's requirement that it provide the legal theories underlying its defenses, the Court finds that striking any legal theory that is consistent with the pleadings would be unjust. *See* Fed. R. Civ. P. 37(b)(2)(A). Plaintiff states that it does not "seek[] to preclude [Defendant] from asserting at trial that it was free to reject [Plaintiff]'s purchase orders," but rather, "if the jury does not accept this interpretation, [Defendant] should not be able to argue the Supply Agreement is therefore unenforceable." (Doc. 476 at 8 n.2); *see* Fed. R. Civ. P. 37(b)(2)(A)(ii). If the Court were to grant Plaintiff's requested sanction, the Court would not only preclude the Contingent Invalidity Defense but it would also effectively preclude

Defendant from introducing evidence in support of the Contingent Invalidity Defense. *See Sarytchev v. Korolev*, No. 12-CV-02284-NJV, 2013 WL 6138969, at *5 (N.D. Cal. Nov. 21, 2013).

"Evidentiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless." *Rooney v. Sierra Pac. Windows*, No. 10-CV-00905-LHK, 2011 WL 2149097, at *3 (N.D. Cal. June 1, 2011) (citations omitted) (denying request to preclude evidence under Rule 37(b)(2)(A)(ii)). A sanction is "particularly harsh" when it disposes of an issue. *See R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) ("[T]he sanction was particularly harsh, because it dealt a fatal blow not only to [Plaintiff]'s entire *Brandt* fees claim but also its request for punitive damages."); *see Sarytchev*, 2013 WL 6138969, at *5 (describing sanction that precluded an argument under Rule 37(b)(2)(A)(ii) as "severe"). Plaintiff seeks the "particularly harsh" sanction of precluding Defendant from offering argument and evidence in support of the Contingent Invalidity Defense. (*See* Doc. 468 at 7 (noting that violation of General Order No. 17-08 can result in the sanction of "prohibiting the disobedient party from supporting or opposing designated claims or defenses" (quoting Fed. R. Civ. P. 37(b)(2)(A)(ii)))).

Defendant essentially asserts through the Contingent Invalidity Defense that, if the Supply Agreement requires Defendant to accept purchase orders, then Plaintiff cannot prevail on its breach of contract claim as Plaintiff will be unable to establish all elements of its claim. (*See* Doc. 473 at 4–6, 8–10). A plaintiff claiming breach of contract must show "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 950 N.Y.S.2d 8, 9 (App. Div. 2012) (citation omitted).[2] "There can be no contract absent a mutual intent to be bound." *Four Seasons Hotels Ltd. v. Vinnik*, 515 N.Y.S.2d 1, 5 (App. Div. 1987) (citing *Joseph Martin, Jr., Delicatessen v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981)); *see also In re Cablevision Consumer Litig.*, 864 F. Supp. 2d 258, 263 (E.D.N.Y. 2012) (rejecting party's

---

[2] The Court applies New York law consistent with the Supply Agreement's choice-of-law provision. (*See* 59-1 at 9).

- 8 -

interpretation of contract because it would have rendered it "arguably illusory" such that contract would lack a mutual intent to be bound). Mutual assent requires that the parties manifested agreement to all the material terms. *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999) ("The inquiry is twofold: do the blanks in the [agreement] render those terms impenetrably vague and uncertain, and are the terms themselves material?"). Defendant argues that, if the Supply Agreement is construed as to limit its ability to reject purchase orders without requiring Plaintiff to purchase exclusively from Defendant and with no minimum purchase requirement, then there would be a lack of mutual assent for absence of material terms and lack of mutual intent to be bound, either of which would render the Supply Agreement unenforceable.[3] (*See* Doc. 473 at 5). *See generally Corning Inc. v. VWR Int'l, Inc.*, No. 05 CV 6532 CJS, 2007 WL 841780 (W.D.N.Y. Mar. 16, 2007) (finding a valid requirements contract despite the fact that the agreement was not "entirely exclusive"). As such, if Defendant is correct, then Plaintiff's interpretation must be rejected. *See Blandford Land Clearing Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 698 N.Y.S.2d 237, 243 (App. Div. 1999).

It would be unjust to preclude the Contingent Invalidity Defense. First, as noted, both parties were vague in their mandatory initial discovery responses. Plaintiff did not advance any legal theory supporting its allegation that Defendant breached by rejecting purchase orders nor did it articulate how it intended to meet the elements of a breach of contract claim under New York law for that alleged breach. (Doc. 419-2 at 17–21). However, Plaintiff contends that Defendant "cannot credibly ask the Court to believe that it was surprised and first learned that [Plaintiff] claimed [Defendant] could not freely reject orders in the summary judgment briefing." (Doc. 476 at 7). The Court disagrees. It is possible that Defendant would not have gleaned from the mere allegation that Defendant breached the Supply Agreement by "refusing to accept new purchase orders" that Plaintiff would support that allegation by arguing in favor of an interpretation of the Supply

---

[3] As such, if Defendant is correct, it is unclear how the Court could even preclude the Contingent Invalidity Defense given that a contract that lacks either mutual assent as to the essential terms or mutual intent to be bound is unenforceable as a matter of law.

- 9 -

Agreement that would arguably make the Supply Agreement unenforceable. (Doc. 59 at 31). Under these circumstances, precluding the Contingent Invalidity Defense would be unjust.

Second, the particularly harsh sanction of precluding the Contingent Invalidity Defense is inappropriate because Plaintiff has not shown that any failure to disclose the Contingent Invalidity Defense was not harmless. As noted above, evidence preclusion is a harsh sanction that will not be imposed where a discovery violation is harmless. *See, e.g.*, *Rooney*, 2011 WL 2149097, at *3. Plaintiff contends that it was prejudiced "by its inability to conduct discovery and retain experts on the issue" of whether Defendant breached the Supply Agreement by rejecting purchase orders. (*See* Doc. 476 at 8). This argument strains credulity.

It is beyond dispute that Defendant categorically denied it breached the Supply Agreement by "[r]efusing to accept new purchase orders from [Plaintiff]." (Doc. 60 at 50, 53–54). Consequently, Plaintiff was on notice that Defendant denied liability for "[r]efusing to accept new purchase orders." (*Id.*). General Order No. 17-08 does not relieve Plaintiff of its responsibility to ensure that it can establish its own claims under the relevant law. Plaintiff cannot assert prejudice when the essence of its claim for relief for refusal to accept purchase orders arises from the Supply Agreement itself, which it had in its possession throughout this litigation. *Cf. Patsystems (NA) LLC v. Trend Exch., Inc.*, 695 F. App'x 206, 208–09 (9th Cir. 2017). If Plaintiff failed to ensure that it could prove the elements necessary to establish any theory in support of its claim that Defendant breached the Supply Agreement, that is self-inflicted harm.

As such, Plaintiff has not adequately shown prejudice. *Morales v. Barnett*, No. 2 CA-CV 2007-0118, 2008 WL 4638133, at *8–9 ¶¶ 27, 31 (Ariz. Ct. App. Feb. 25, 2008) (holding that trial court did not err in rejecting motion for new trial after disclosure of new legal theory *in the middle of trial* as "no prejudice affirmatively appear[ed] from the record").[4] Plaintiff has not been prejudiced by any failure to disclose the Contingent

---

[4] As noted above, Arizona Rule of Civil Procedure 26.1(a) includes the same operative language as General Order No. 17-08 as to the requirement that the parties disclose the

- 10 -

Invalidity Defense as the defense adds no new issues to the case. *Cf. Englert v. Carondelet Health Network*, 13 P.3d 763, 768 ¶ 11 (Ariz. Ct. App. 2000) (affirming preclusion of undisclosed affirmative defense because defendant "improperly added issues to the litigation" as "he attempted to reduce his liability on entirely new grounds"). It has always been Plaintiff's burden to prove that the Supply Agreement restricted Defendant's ability to reject purchase orders and that Defendant's failure to accept purchase orders amounts to breach. It cannot be understated that it is Plaintiff's responsibility to ensure it can prove its breach of contract claim against Defendant for "refusing to accept new purchase orders from [Plaintiff]" under New York law. (Doc. 59 at 31; *see also id.* at 33–34).

If Defendant violated General Order No. 17-08 by failing to disclose the Contingent Invalidity Defense, sanctioning Defendant by precluding that defense would be unjust. Therefore, assuming there was a violation of the General Order's requirements, the Court will not sanction Defendant under Rule 37(b)(2). The Motion to Strike (Doc. 468) will be denied as it relates to the Contingent Invalidity Defense.

### IV.  UNACCEPTABLE DEPARTURES FROM COURT INSTRUCTIONS

The Joint Proposed Final Pretrial Order (Doc. 457-1) and the Joint Proposed Jury Instructions (Doc. 460; Doc. 460-1; Doc. 460-2) include unacceptable departures from this Court's instructions. The parties shall ensure that these errors are corrected.

First, the parties provided diverging characterizations of contested issues. The Court must have one characterization of each contested issue. (*See* Doc. 202 at 17 (providing example of contested issues of fact and law section of joint proposed final pretrial order)). If the parties cannot agree to one characterization of each issue, then the parties shall appear before this Court to mediate the dispute, and the Court will frame the contested issues that the parties cannot agree on. To that end and for the duration of this case, each party shall designate *one* attorney to serve as lead counsel and spokesperson for that party. The parties shall file a notice on or before **Tuesday, May 26, 2020**, indicating who designated lead counsel is and stating whether they were able to come to agreement on each contested

---

legal theories in support of their claims and defenses. Case law applying Rule 26.1(a) is therefore instructive and persuasive.

issue. If the notice indicates they did not agree to one characterization for each contested issue, the designated lead counsel for each party shall appear, in person, before this Court **at 2:00 p.m. on Wednesday, June 3, 2020**, and the Court will mediate and decide any dispute as to the characterization of any contested issues. If the Court deems that either side has taken an unreasonable position, the Court will issue sanctions.

Second, the Joint Proposed Final Pretrial Order (Doc. 457-1) also unnecessarily includes hundreds of contested issues of fact that are only distinguishable based on lot number. For example, there is no need to have two hundred issues relating to Defendant's alleged failure to meet the lead time for each particular lot number. (*See* Doc. 202 at 17). Because it appears that Plaintiff made the decision to structure these contested issues of fact in this way, (Doc. 457-1 at 37–38), Plaintiff shall revise the following issues. Plaintiff shall strike issue numbers 72 to 268 and shall include one issue at what is currently issue number 71 that discusses breach due to the alleged failure to meet lead times and shall list all the lot numbers at issue. As for issue numbers 292 to 702, Plaintiff shall strike issue numbers 293 to 702 and shall take what is currently issue number 292 and list the lot numbers that fell below the alleged yield requirement. There is simply no need to have hundreds of issues that are only distinguishable by the lot number at issue.

Third, Defendant failed to follow the Court's instructions regarding the information that must be included within the list of witnesses. (Doc. 202 at 17). The parties were required to provide "a brief statement as to the testimony of each witness" listed. (*Id.*). Defendant shall include this information in the revised joint proposed final pretrial order.

The revised joint proposed final pretrial order shall be filed (and emailed to chambers) by **Friday, June 5, 2020**. The parties shall file it in accordance with the Court's prior instructions in the Order Setting Final Pretrial Conference. (Doc. 202). The parties shall also specifically ensure that the four issues identified herein are corrected (the three issues just discussed as well as the removal of any reference to the Complete Invalidity Defense).

The Court also ordered the parties to file the proposed jury instructions in the following format for a disputed jury instruction:

> If the instruction is disputed, the party proposing the instruction shall include citation to authority to support the requested instruction. The party opposing the instruction shall state all objections to such instruction immediately following the instruction and the opposing party's authority for such objection. If the opposing party offers an alternative instruction, such alternative instruction shall immediately follow the opposing party's objection.

(Doc. 202 at 6 (emphasis omitted)). Based on the parties' comments within the Joint Proposed Jury Instructions, the parties understood what was required of them and for a variety of finger-pointing reasons, failed to comply. (Doc. 460). At this point, each party has seen the other party's proposed instructions, so this hurdle is overcome. The parties must have a conference call within the next **five days** to discuss which instructions are in dispute, and the nature of the dispute. If the parties cannot agree on a time for this call, the call must take place at **8:00 a.m., Arizona time, Thursday, May 21, 2020**.

After this call, the parties must utilize Defendant's proposed jury instruction format (Doc. 460-2)—which is the closer of the two proposals to the Court's required format. The parties will start with Plaintiff's proposed instructions. As to each, Defendant shall state "no objection" or "objection." If there is an objection, immediately below the objection, Defendant shall identify the precise words or lines rendering the instruction an incorrect statement of law. Next, Defendant shall provide the precise language that would correct the asserted incorrect statement. If necessary, Defendant may submit an alternative instruction. Next, if necessary, Plaintiff may state any objection below the language of Defendant's alternative instruction. Once the parties complete review of Plaintiff's proposed instructions, they should go to Defendant's proposed instructions and use the same procedure. The parties may not submit competing versions of the same instruction unless there is a good faith objection to a party's proposed version. The revised joint proposed jury instructions, in the format required by the Court, (Doc. 202 at 6–7), must be filed (and emailed to chambers) by **Thursday, May 28, 2020**. If the parties cannot file in

this format, they shall show cause why they should not be sanctioned at the final pretrial conference (set for **Wednesday, June 10, 2020**).

The Court is perplexed by counsels' inability to complete what should be simple administrative tasks to get this case ready for trial. Some of the failures described in this Order are, unfortunately, issues of first impression for the undersigned. Judicial resources have been wasted due to the continued gamesmanship that is rising to the level of bad faith. The parties' counsel are again reminded and strictly warned that continued failure to exercise professionalism in their dealings before this Court will result in sanctions being issued.

## V.   CONCLUSION

The Court will grant the Motion to Strike (Doc. 468) to the extent it seeks preclusion of the Complete Invalidity Defense. Accordingly, as noted, the Court rejects the Joint Proposed Final Pretrial Order (Doc. 457-1), and the Court will strike it from the record. The Court will deny the Motion to Strike (Doc. 468) to the extent it seeks preclusion of the Contingent Invalidity Defense. Either party may file an *appropriate*[5] motion pursuant to Federal Rule of Civil Procedure 50(a) if that party believes that the evidence establishes, as a matter of law, whether Defendant is permitted under the Supply Agreement to reject any purchase order for any reason. The parties shall file revised versions of the joint proposed final pretrial order and joint proposed jury instructions in accordance with the instructions above.

Based on the foregoing,

**IT IS ORDERED** that the Motion to Strike (Doc. 468) is **GRANTED IN PART** and **DENIED IN PART** as described above.

**IT IS FURTHER ORDERED** that the Clerk of Court shall strike the Joint Proposed Final Pretrial Order (Doc. 457-1) from the docket.

---

[5] The Court stresses the word, "appropriate," and reminds the parties' counsel of its admonition that the gamesmanship that has plagued this litigation will not be tolerated. (Doc. 474 at 5).

1   **IT IS FURTHER ORDERED** that the parties shall file a notice by **Tuesday, May 26, 2020**, that designates *one* attorney who will serve as lead counsel for the duration of this case and that indicates whether they have agreed to *one* characterization of each contested issue. If the parties indicate in this notice that they were unable to do so, designated lead counsel shall appear, in person, before this Court on **Wednesday, June 3, 2020**, at **401 W. Washington Street, Phoenix, Arizona, Courtroom 503**, to mediate any dispute as to the characterization of any contested issues. If either side takes an unreasonable position, the Court will issue sanctions.

**IT IS FURTHER ORDERED** that the parties shall correct the errors identified above in the Joint Proposed Final Pretrial Order (Doc. 457-1) and then finalize and sign the revised **joint** proposed final pretrial order and lodge it with the Court (by electronically filing a notice of lodging with the joint proposed final pretrial order) by **Friday, June 5, 2020**. The revised version must be in accordance with the Court's prior instructions (Doc. 202) and the instructions contained herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall strike the Proposed Jury Instructions (Doc. 460; Doc. 460-1; Doc. 460-2). The parties shall confer within the **next five days** (as described above) and shall file (and email to chambers) a revised version of the proposed jury instructions by **Thursday, May 28, 2020**, that is in accordance with the Court's prior instructions (Doc. 202) and the instructions contained herein.

Dated this 18th day of May, 2020.

*James A. Teilborg*
Senior United States District Judge