Brian W. LaCorte (012237)
lacorteb@ballardspahr.com
Brian Schulman (016008)
schulmanb@ballardspahr.com
Jonathon A. Talcott (030155)
talcottj@ballardspahr.com
**BALLARD SPAHR LLP**
1 E. Washington Street, Suite 2300
Phoenix, AZ  85004-2555
Telephone:    602.798.5400
Facsimile:     602.798.5595

Matthew B. Lowrie *(admitted pro hac vice)*
mlowrie@foley.com
Kevin M. Littman *(admitted pro hac vice)*
klittman@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199-7610
Telephone:    617-342-4000
Facsimile:     617-342-4001
*Attorneys for Defendant
Omron Corporation*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IceMOS Technology Corporation,<br><br>    Plaintiff/Counter-defendant,<br><br>v.<br><br>Omron Corporation,<br><br>    Defendant/Counter-claimant. | NO. 2:17-CV-02575-JAT<br><br>**OMRON CORPORATION'S MOTION TO CONTINUE THE TRIAL TO NOVEMBER 30, 2020** |

While Omron Corporation ("Omron") would otherwise be resolute to begin trial, due to COVID-19 related circumstances, Omron respectfully moves the Court to continue the trial from June 29, 2020 to November 30, 2020.[1] A trial with numerous witnesses flying in from other parts of the United States and Japan, with numerous attorneys representing both sides who are also flying in from Boston and Dallas, all of whom must appear in the confined setting of the courtroom and other confined settings outside the courtroom, presents risks to everyone and potentially prejudicial limitations on Omron's Japanese witnesses.

First, Omron believes that proceeding to trial on June 29 will subject its employees, experts, and legal team (and, by extension, their families) to an unreasonable risk of contracting and spreading COVID-19. In the United States, over 100,000 individuals have died from COVID-19, and while various areas of the country are moving into phases of opening up, this is generally being done with caution, limiting travel and requiring social distancing, keeping in mind that things could worsen and that reopening too quickly could result in rebounding of cases. Moreover, Omron's lead counsel and some witnesses are in COVID-19 high-risk groups, and are encouraged to take extra precautions.

Second, seven of the fact witnesses that Omron expects to call at trial are Omron employees who reside in Japan and will need to travel to the United States to give testimony. Pursuant to the applicable United States and Japanese guidelines, they will need to self-quarantine for a minimum of four weeks (two weeks upon arriving in the United States and two weeks upon returning to Japan) and consequently will be out of work for all that time, plus the time at trial testifying or waiting to testify. Of those seven witnesses, four either manage or supervise production at Omron factories and thus will not be able

---

[1] The Court has ordered that Omron may request a continuance of the trial at the Final Pretrial Conference by filing a notice by June 5, 2020 "that it intends to seek a continuance and specify the reason(s) why." (Doc. 480 at 3). This motion serves as that notice and motion.

1

perform most of their job responsibilities while they self-quarantine. This will negatively affect Omron's ability to operate those factories for an extended period of time.

Finally, the requirements set out in the U.S. District Court for the District of Arizona's ("District of Arizona") General Order 20-26, dated May 28, 2020, which limits the number of individuals allowed in the courtroom at any given time, will prejudice Omron if trial proceeds on June 29. Counsel for Omron will not be able to competently represent Omron if most of its team members are not allowed in the courtroom during trial.

In sum, Omron believes that proceeding with the June 29, 2020 trial date is inadvisable and impractical, will especially burden Omron's employee witnesses, and also will prejudice Omron. While Omron is cognizant that General Order 20-26 permits "the resumption of limited in-court proceedings" and seeks to "balance the various interests implicated by the COVID-19 public health emergency," (Gen. Ord. 20-26 at 1), Omron respectfully submits that this multi-week jury trial with large trial teams and many international witnesses is ill-fit to be one of the first civil jury trials to take place in the District of Arizona amidst the continuing COVID-19 pandemic. Omron requests that the Court continue the trial to the next available trial setting, November 30, 2020.

**I.   BACKGROUND**

This case involves a dispute between a Delaware corporation, IceMOS Technology Corporation ("IceMOS"), and a Japanese corporation, Omron. (Doc. 59 at 2, ¶¶2, 3). IceMOS's claims and Omron's counterclaims revolve around a supply agreement through which Omron sold to IceMOS metal-oxide semiconductor wafers manufactured from its wafer fabrication facility in Yasu, Japan. (*See* Doc. 59 at 7, ¶39). Both parties seek damages of tens of millions of dollars.

Given Omron's principal place of business is in Japan and many of the events described in IceMOS's complaint occurred in Japan, nearly all of Omron's fact witnesses reside in Japan. Among the seven fact witnesses Omron plans to call at trial, all but one are Japanese citizens and residents of the Kyoto area. (*See* Doc. 457-1 at 270-71 (at least Messrs. Hasegawa, Arai, Yoda, Nukii, Yugami and Nakasaka plan to testify)).

As has previously been described by Omron (*See, e.g.*, Doc. 469 at 2-3; Doc. 475 at 3), both Japan and the United States have faced significant challenges due to the unfolding COVID-19 pandemic. As of this filing, over 100,000 individuals have died in the United States.[2] As of June 2, 2020, Arizona reported "a record number of new coronavirus cases" (1,127 cases).[3]

The United States has issued travel guidelines such that any witness traveling from Japan to the United States will need to self-quarantine for 14 days prior to giving testimony. (Ex. B at ¶15; Ex. C). Japan has even stricter guidelines such that any witness returning to Japan from the United States will need to take a PCR test for COVID-19, self-quarantine for 14 days, and avoid using public transportation during that period. (Ex. B at ¶16; Ex. D; Ex. E; Ex. F).

Omron has its own internal rules related to the COVID-19 situation, including Omron having instructed that travel between Japan and any country that the Japanese government categorizes as "category #3," which includes the United States, is banned. (Ex. A at ¶5). For an Omron employee to travel to the United States, he or she needs to obtain special approval from Omron's executive management. (Ex. A at ¶5). Since March 15, 2020, *no* Omron employees have traveled to the United States, and there are no plans for employees to do so. (Ex. at ¶4).

## II.   PROCEDURAL BACKGROUND

In 2019, the Court set trial in this case for April 6, 2020. (Doc. 174). On March 13, 2020, the District of Arizona issued General Order 20-10 in response to "the well-documented concerns surrounding" COVID-19, and the Order continued all civil jury trials

---

[2] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (accessed on June 1, 2020).

[3] Alison Steinbach, *Arizona Coronavirus Update: 21,250 Confirmed Cases, Including 1,127 New Ones Reported Tuesday; 941 Known Deaths*, AZCentral, https://www.azcentral.com/story/news/local/arizona-health/2020/06/02/coronavirus-arizona-update-june-2-21-250-cases-941-known-deaths/5312272002/ (June 2, 2020).

scheduled to commence before April 10, 2020 pending further order of the Court. In response, this Court vacated the April 6, 2020 trial date and ordered the parties to file a joint notice articulating trial dates that are "no sooner than Monday, May 25, 2020." (Doc. 463 at 1).

In the jointly-filed notice, Omron proposed trial dates of August 24 or September 21, 2020 and stated that it "believes that beginning the trial in June will likely be too soon in view of the coronavirus spread and the hoped for flattened 'curves.'" (Doc. 469 at 2). The Court noted that "attempting to get this case tried as soon as possible is preferable" and adopted IceMOS's suggested June 29, 2020 trial date. (Doc. 470 at 1). The Court further provided that "no continuances will be granted due to witness unavailability." (Doc. 470 at 2).

Omron thereafter sought reconsideration of the Court's order that "no continuances will be granted due to witness unavailability." (Doc. 475). Omron's motion for reconsideration highlighted that "the COVID-19 pandemic is an evolving situation" and argued that "conditions created by the COVID-19 panedmic [may] make it unreasonable or impossible for material witnesses located in Japan to travel to the United States for trial." (Doc. 475 at 2). The Court reconsidered its prior order and stated that Omron was permitted to "file a notice by June 5, 2020 that it intends to seek . . . a continuance and specify the reason(s) why." (Doc. 480 at 3).

On May 28, 2020, the District of Arizona issued General Order 20-26, which allows hearings and jury trials to resume in the Phoenix Courthouse as of June 1, 2020. (Gen. Order 20-26 at 2). It also set protocols for hearings and jury trials. (*Id.* at 4-5). Specifically, only one attorney and one client representative can sit at counsel table at any given time (*id*. at 4), and no more than ten persons can be seated in the public seating area of the courtroom at any one time (*id*. at 4-5).

### III. THE TRIAL SHOULD BE CONTINUED TO NOVEMBER 30, 2020

#### A. Legal Standard

The Ninth Circuit Court of Appeals ("Ninth Circuit") has articulated four factors

4

that a district court must consider in determining whether a continuance should be granted: (1) "prejudice to the requesting party caused by the denial of the continuance"; (2) "the diligence of the party requesting the continuance"; (3) "whether the purpose of the continuance will be achieved"; and (4) "inconvenience to the court, opposing parties, and witnesses." *Kassab v. San Diego Police Dep't*, Case No. 07-cv-01071-BAS(JLB), 2015 U.S. Dist. LEXIS 127858 (S.D. Cal. Sept. 22, 2015) (citing *United States v. 2.61 Acres of Land, More or Less, Situated in Mariposa Cty., State of Cal.*, 791 F.2d 666, 671 (9th Cir. 1985)). Where "denial of a continuance of the proceeding directly affects a defendant's ability to present evidence," a "less stringent prejudice test" is applied. *Id.* (citing *United States v. Mejia*, 69 F.3d 309, 318 n.11 (9th Cir. 1995)).[4]

### B. Omron Will Face Substantial Prejudice, along with Health Risks to Individuals in the Courtroom, if the Trial Begins on June 29

Omron will face substantial prejudice, along with health risks to all individuals in the courtroom and the general public if the trial is not continued.

#### 1. The June 29, 2020 Trial Date Will Pose aRisk to Omron's Witnesses and the Trial Team, and Will Risk General Spread of the Coronavirus to Others

As of the filing of this motion, over 100,000 individuals have died from COVID-19 related complications in the United States. While states are beginning to reopen, there is uncertainty as to the overall trend in the United States and in specific states given that many carriers of the disease are asymptomatic and there is not reliable, widespread testing for

---

[4] As is apparent from the citation in *Kassab* (a civil case) to *Mejia* (a criminal case), the Ninth Circuit does not appear to distinguish the level of prejudice a movant is required to show in a civil case as opposed to a criminal case. *See, e.g.*, *Martel v. County of Los Angeles*, 56 F.3d 993, 995 (9th Cir. 1995) ("[A] showing of prejudice is necessary to obtain reversals of decisions on continuance motions in both civil and criminal contexts."). Instead, as explained in *Mejia*, the Ninth Circuit requires an "exceptionally high showing of prejudice" where a continuance is sought "for the purposes of obtaining discovery" and a "less stringent" showing of prejudice where the continuance is related to the "ability to present evidence." *Mejia*, 69 F.3d at 318 n.11.

COVID-19 in the United States.[5]  In Arizona, for example, COVID-19 emergency room visits have been rising and hospitalizations recently hit a new peak.[6]  Today alone, June 2, 2020, Arizona reported a record number of 1,127 new positive COVID-19 cases, with 21,250 cases since the outbreak and nearly half of all cases in Maricopa County.[7]  This uptick and related uncertainty regarding the trend means that, in general, there is a risk in beginning a trial of this length and with this number of international and out of state witnesses on June 29.

Stated plainly, Omron was hopeful the COVID-19 circumstances would improve sufficiently to present less risk to its employees entering the U.S. and testifying, and less risk to its counsel team (and IceMOS's witnesses and counsel, for that matter) by mid-summer. But that is not the case. The risk of COVID-19 transmission is increased because a number of Omron's witnesses and members of its trial team will be traveling from hotspots to Arizona.  Three of Omron's four experts (Mr. Cavaiani, Mr. Charles Malek, and Mr. Ken Malek) are traveling from the Chicago area.  Omron's trial team from Foley & Lardner LLP (four attorneys, one paralegal and one assistant) is based out of Boston. (Ex. B at ¶13).  The trial will likewise require a large number of other people to travel. There are seven Omron witnesses traveling from Japan.  IceMOS's legal team and two of its experts, Mr. Bratic and Mr. Wu, will travel from Texas.  One to two IceMOS witnesses

---

[5] Richard Harris, *How Reliable are COVID-19 Tests?  Depends Which One You Mean*, National Public Radio, https://www.npr.org/sections/health-shots/2020/05/01/847368012/how-reliable-are-covid-19-tests-depends-which-one-you-mean (May 29, 2020).

[6] Stephanie Innes, *Arizona Republic, COVID-19 Emergency Room Visits Have Been Climbing in Arizona, Hit High Point This Week*, AZCentral, https://www.azcentral.com/story/news/local/arizona-health/2020/05/29/covid-19-emergency-room-visits-arizona-climbing-hospitalizations-hit-record/5284501002/ (May 29, 2020); Alison Steinbach, *Arizona Coronavirus Update: 21,250 Confirmed Cases, Including 1,127 New Ones Reported Tuesday; 941 Known Deaths*, AZCentral, https://www.azcentral.com/story/news/local/arizona-health/2020/06/02/coronavirus-arizona-update-june-2-21-250-cases-941-known-deaths/5312272002/ (June 2, 2020).

[7] https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php (last accessed June 2, 2020).

may be traveling from Japan – Mr. Hidaka and Mr. Ishiguro. (Doc. 457-1 at 268-69). IceMOS witnesses Mr. Mischou and Mr. Sasson are located in the San Francisco Bay Area in California. (Doc. 457-1 at 266-68). IceMOS's CEO, Sam Anderson, could be traveling from Ireland.[8] At this point, the Center of Disease Control ("CDC") continues to advise that travel increases a person's chances of getting infected and spreading COVID-19 and that staying home is the best way to protect oneself and others from getting sick.[9]

To amplify on how Massachusetts is a hotspot and also how this impacts Omron's counsel ability to prepare for trial, the current statistics show that Massachusetts has over 95,000 confirmed cases and over 6,000 deaths.[10] Foley & Lardner's Boston office has been closed since March 24, 2020, and there is currently no set date for reopening. (Ex. B at ¶11).[11] In addition, Massachusetts guidelines call for a 14 day self-quarantine after interstate travel, meaning that, after the pretrial conference, Omron's counsel on return to Boston will be in quarantine until it is time to travel for trial and for two weeks after trial. (Ex. B at ¶17; Ex. H (https://www.mass.gov/info-details/frequently-asked-questions-about-covid-19)).

Omron is also concerned that the July 4 holiday weekend will increase the risk of individuals contracting COVID-19. With the trial having a six day recess for the July 4 long weekend, which is traditionally a holiday in which people travel to be together and

---

[8] IceMOS witnesses are listed in the proposed pretrial order. (Doc. 457-1 at 266-69). Their locations come from both their deposition locations and the locations of the companies where they work.

[9] https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html (last accessed June 1, 2020).

[10] https://www.mass.gov/info-details/covid-19-response-reporting (last accessed June 1, 2020).

[11] While it is possible for Foley employees to work from the Boston office, they must first obtain permission from the office's Managing Partner and its Director of Operations. (Ex. B at ¶12). To date, no Foley attorney in this matter has traveled to the Boston office since March 24, and two members of the litigation support team have gone into the office on only three occasions. (Ex. B at ¶14).

7

socialize in large groups for cookouts and fireworks, the risks of COVID-19 would seem even greater.

Moreover, there are a number of aggravating factors that make the risks higher. For instance, Omron's lead counsel, Mr. Lowrie, is at high-risk if he contracts COVID-19 because he is immunocompromised, based on his heart attack this past fall. (Ex. B at ¶8). Because of health concerns, Mr. Lowrie has not traveled into Boston from his house far away from the city for almost three months and has no plans to travel from there until the situation improves much more than it has thus far, other than whatever travel the Court requires for this case. (Ex. B at ¶¶9-11). While he attended the summary judgment hearing less than three weeks after a heart attack where he suffered damage to his heart, traveling for and attending a trial in June-July in Arizona represents a high risk to him at this time, and it is a risk that cannot be as aggressively managed with personal steps as he took in the fall, with the unknown risks of infection that can still come from anywhere at this time based on the levels of coronavirus infections everywhere, including Arizona. (Ex. B at ¶¶6-9).

Similarly, three of Omron's experts are in the category of high-risk for severe illness from COVID-19 because they are over 65 years of age.[12] (Ex. B at ¶¶ 18-19).

The courtroom on a typical trial day in this case will therefore contain numerous individuals who have flown in from different states and from Japan, along with jurors coming in from different places in Maricopa County and beyond. Some of the people in the courtroom will be in categories that are at high risk of severe illness from COVID-19, including some of the jurors, presumably. Seven of the witnesses will need a translator, which means yet another person in the courtroom. There will also be a computer operator for Omron's trial team and presumably one for IceMOS. This appears to be the type of setting that the CDC and even the Arizona Governor's executive orders (e.g., Exec. Order

---

[12] Center for Disease Control, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed May 29, 2020).

2020-36 at ¶ 4) advise against because of the vast amount of travel that will be required and because physical distancing will be impractical in both the courtroom and also outside of the courtroom as the teams must gather to prepare for trial.

If a juror contracts COVID-19 and remains asymptomatic, or potentially anyone in the courtroom contracts it, he or she risks infecting the entire courtroom, and thus at a minimum, it would create risk of a mistrial. The health risks thus prejudice Omron, as well as everyone else.

Some courts have observed that civil jury trials may be handled in relatively short cases involving local witnesses and lawyers, noting that large trials involving travel stand on a different ground. (Ex. G. (interviewing Chief District Judge Rodney Gilstrap from the Eastern District of Texas)). Omron respectfully submits that a three-week trial with a number of high-risk attendees, spanning a holiday weekend and involving international travel as well as travel from COVID-19 hot spots in Illinois, California and Massachusetts, is a risk that should not be taken in these early stages of reopening the courtroom and one high-risk individuals should undertake. Omron respectfully submits that this is not the best initial civil case to implement the District's COVID-19 new safety procedures.

### 2. The June 29 Trial Date Will Impose Substantial Hardship on Omron and Its Witnesses

Beginning trial on June 29 will also impose significant hardship on Omron and its fact witnesses because of stringent COVID-19 related travel requirements. Seven of Omron's expected fact witnesses are Omron employees who reside in Japan. (Ex. A at ¶6). Taking the COVID-19 risks in an appropriately serious manner, Omron has instructed that travel by its employees between Japan and any country that the Japanese government categorizes as "category #3," which includes the United States, is banned. (Ex. A at ¶5). For an Omron employee to travel to the United States for work, he or she mustobtain approval from Omron's executive management, who will decide to approve such travel by considering the circumstances of the person making the request, his or her family, and other

9

Omron employees. (Ex. A at ¶5). Omron has approximately 10,600 employees in Japan.[13] Since March 15, 2020, *no Omron employees have traveled to the United States*, and there are no plans for employees to do so. (Ex. A at ¶4). Of course, Omron also takes this trial very seriously, and top management will provide an exception and allow them to travel to the U.S. for the trial, if there is no other choice. (Ex. A at ¶6). If trial begins on June 29, however, the first Omron employees to travel from Japan to the United States since the outbreak would be the individuals testifying in this matter. (Ex. A at ¶6).

Omron employees traveling to the United States must also comply with guidelines promulgated to manage the COVID-19 pandemic by both the United States and Japanese authorities. Pursuant to CDC Guidelines, any Omron witness traveling from Japan to the U.S. is required to self-quarantine for 14 days, and they will therefore need to arrive in the United States at least 14 days prior to the date they give testimony, which is uncertain given that IceMOS will present its case-in-chief first. (Ex. B at ¶15; Ex. C). Upon returning to Japan, Omron's witnesses will also need to take a PCR test for COVID-19, self-quarantine for 14 days, and avoid using public transportation during that period. (Ex. B at ¶16; Ex. D; Ex. E; Ex. F). Omron's witnesses who reside in Japan and live in the Kyoto area will thus need to make a 300 mile journey from the Tokyo airport by non-public means. (Ex. B at ¶16).

Complying with United States and Japanese guidelines will both unduly inconvenience Omron employees and will negatively affect Omron's ability to run the factories where these employees work. At least four of the seven witnesses (Messrs. Arai, Yugami, Yoda, and Nakasaka) work at Omron factories. (Ex. A at ¶7). They cannot perform most of their job responsibilities while away because they either manage these factories or supervise manufacturing there and need to be on-site. (Ex. A at ¶7). With the current travel requirements, they will not be able to perform their job for a minimum of 28 days, just counting the quarantining periods alone, and realistically speaking, they will not

---

[13] https://www.omron.com/global/en/about/corporate/outline/ (last accessed June 1, 2020).

10

be able to do so for longer than that given that additional time will need to be built in to account for the uncertainties as to the exact day they will testify at trial. (Ex. A at ¶8). During that time, Omron's business operations at the factories will be negatively affected as these managers and supervisors will not be able to do their jobs. (Ex. A at ¶9).

Additionally, one of the witnesses has certain healthcare concerns, if required to stay for an extended period. (Ex. A at ¶10). All have concerns about being away from family for so long, including responsibilities for children and elderly parents. (Ex. A at ¶10).

This prejudice is particularly strong against Omron. IceMOS has no "will call" witnesses from Japan. (Doc. 457-1 at 266-269 (showing IceMOS's only Japanese employees as a "may be called," Mr. Hidaka, and an "unlikely to be called," Mr. Ishiguro)). Omron has no corporate witnesses in the U.S. Omron's ability to prepare for and conduct a trial is more severely handicapped than IceMOS's.

There is also still the potential for severe prejudice due to Omron's inability to call witnesses, who may become symptomatic and cannot travel or be denied entry into the U.S.[14] If there is a new flare up of COVID-19 in the United States, Japan could ban travel to the U.S. or bar witnesses who do come from returning. Witnesses' serious concern for health and family reasons is warranted, especially given the length of time that U.S. and Japanese quarantine guidelines require and the crisis of COVID-19 issues in the U.S. since the reconsideration briefing alone.

In short, while it is not currently impossible for the six Japanese Omron witnesses to travel from Japan to testify, that may change and, even so, a trial in June would subject them to health risks, requiring approval from top management as an exception (indeed, the only exception) to the company's current policy restricting travel, and requiring an

---

[14] As noted in Omron's prior motion for reconsideration, Omron cannot predict whether its witnesses will all be available for trial that is more than three-weeks away given the evolving situation of the COVID-19 pandemic, but Omron raises these potential issues at this time given the Court's order requiring notice of a continuance to be lodged by June 5, 2020, (Doc. 480).

extremely long time off from work to comply with U.S. and Japanese quarantine requirements. Omron will be prejudiced if the trial is not continued to the later date, when it is more likely that if the reopening process is successful, quarantining measures will be gone or reduced and the trial can be conducted more safely.

### 3. The June 29 Trial Date Will Further Prejudice Omron in Light of the District Court of Arizona's May 28, 2020 General Order

In response to the Court's order dated May 20, 2020 (Doc. 486), Omron indicated that it will have up to 14 persons in the courtroom, and IceMOS indicated that it will have up to 10 persons. (Doc. 490 at 2). For Omron, this would include six attorneys, two client representatives at times, a paralegal, a computer operator, a translator at certain times, and its expert witnesses at certain times. These numbers are not unreasonable in view of the number of witnesses (about 17-22 witnesses (*see* Doc. 457-1 at 266-70), the hundreds of exhibits (*see id.* at 270-240), the numerous alleged breaches and other claims (*see id.* at 4-36), and the millions of dollars at stake. Yet, according to the recent General Order, only seven people from each party, at most, will be allowed in the courtroom at any given time – one attorney and one client representative at each counsel's table and 10 total persons in the gallery. (Gen. Order 20-26 at 4-5).[15] Thus, if the trial goes forward on June 29, neither IceMOS nor Omron will be able to proceed with their full trial teams as planned. Complying with the District of Arizona's General Order will therefore further prejudice Omron at trial.

### 4. Risk of Mistrial

Given the length of trial (three weeks), that it spans a holiday weekend known for large get-togethers, the breadth (and hot-spot status) of locations that witnesses and counsel will travel from, and the number of people involved, from the Court to counsel to witnesses to translators to jurors, there is a substantial chance someone will think they have lost their sense of smell or pull a temperature reading of 100.5, during the trial. If so, everyone in

---

[15] It is unclear how the computer operator and translator will be considered, within the restrictions of General Order 20-26.

attendance becomes a potential asymptomatic COVID-19 vector.

These risks may be tolerable for a short trial with local witnesses and counsel. Omron respectfully submits that the cost of a mistrial in this case is great, the risk of mistrial and/or prejudice is comparatively high and, therefore, this particular case is not a good candidate for early resumption of jury trials.

### C. Omron Was Diligent in Seeking a Continuance

The COVID-19 pandemic, and all of the complications it has created, has been outside Omron's control, of course, and Omron has acted diligently in seeking a continuance, in view of the ever-changing COVID-19 circumstances and need to assess the state of circumstances at a time relatively close to trial. Omron's earlier Motion for Reconsideration of the Court's Order Setting Trial previously informed the Court that it may seek a continuance for COVID-19 related reasons. (Doc. 475). The Court has stated that it would permit Omron to request a continuance of the trial date at the pretrial conference if it "file[d] a notice by June 5, 2020 that it intends to seek such a continuance and specify the reason(s) why." (Doc. 480 at 3). By this motion, Omron has diligently complied with the Court's deadline.

### D. The Purpose of the Requested Continuance May Be Achieved with the Alternate November Trial Date

While Omron cannot predict the future, Arizona, other U.S. states, and other countries in the world are in the early stages of taking steps to re-open. The alternate trial date, November 30, is five months later. If re-openings proceed as hoped and planned, the COVID-19 situation will be much different by that time, with less travel restrictions, less social distancing restrictions, and with less risk of spread. The general risks to everyone in the courtroom, in a trial like this, with numerous witnesses, attorneys and other personnel from various different areas and countries, some of whom are high-risk, will hopefully also be greatly diminished by that time.

Omron also respectfully submits that as the District of Arizona just begins to bring back jury trials, the trial in this case provides many more problems than other potential

13

trials, for the reasons stated above. By November, hopefully the District will have conducted more trials and will better be able to accommodate and indeed asses risk for a trial like this one, even if there are still some courtroom restrictions still in place at that time.

### E. Inconveniences Do Not Weigh Against a Continuance

A continuance of the trial will not inconvenience the witnesses. To the contrary, as stated above, for Omron's witnesses, particularly those coming from Japan, a late June/early July trial will cause them great hardship, in addition to the health concerns. It also does not appear that the November trial date would inconvenience IceMOS's witnesses.

A continuance of the trial also should not inconvenience IceMOS. While IceMOS has been clear that it prefers a trial date earlier than November, it would not seem to suffer any inconvenience or prejudice from the later trial date when it is only seeking money damages, has never sought a preliminary injunction, and the parties have no on-going relationship.

Finally, as mentioned previously, Omron respects and indeed shares the Court's desire to get this case tried as soon as possible. (Doc. 475 at 12). However, a continuance will provide the benefit of knowledge gleaned from trials in the Sandra Day O'Connor U.S. Courthouse by that time. Of course, Omron will respect the Court's own assessment.

## IV. ALTERNATIVELY, OMRON SUGGESTS A BENCH TRIAL

If the Court is not inclined to continue the trial, Omron respectfully suggests that the case could instead be tried as a bench trial. While this would not eliminate all the risks and prejudices, it would lessen them. For example, the opening and closing statements could be by video. The direct testimony of all witnesses could be on paper by affidavits. Proposed findings of fact and conclusions of law would be on paper. Cross-examinations and re-direct examinations of all witnesses not located in Japan could be by video,[16] or at

---

[16] As previously discussed, Omron would not otherwise be opposed to video cross-examinations of its Japanese witnesses, but they are not possible if the witnesses

least all of the nine expert witnesses cross-examinations could be by video.  A limited 2-3 day period in the fall could be scheduled for only the live cross-examinations and re-directs of the remaining witnesses.

## V.  CONCLUSION

For these reasons, Omron respectfully requests that this Court grant its motion and continue the trial to November 30, 2020.

RESPECTFULLY SUBMITTED this 2nd day of June, 2020.

*/s/ Matthew B. Lowrie*
Brian W. LaCorte
Brian Schulman
Jonathon Talcott
BALLARD SPAHR LLP
1 E. Washington Street, Suite 2300
Phoenix, AZ  85004-2555

Matthew B. Lowrie *(admitted pro hac vice)*
Kevin M. Littman *(admitted pro hac vice)*
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199-7610
*Attorneys for Defendant*
*Omron Corporation*

---

remain in Japan because such videoconferenced testimony is not permitted in Japan.  (*See* Doc. 475 at 8, 10-11).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of June, 2020, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/ Matthew B. Lowrie*